DeWilde et al. *v.* Scranton Building Trades and Construction Council et al., Appellants.

Argued September 29, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Julius Levy,* for appellants.

*Paul A. McGlone,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, November 26, 1941:

This proceeding was instituted by bill in equity filed by Frederick A. DeWilde and August Schwartz, appellees, on April 2, 1941, against Scranton Building Trades and Construction Council and its board of administrative officers, appellants, complaining of alleged unlawful acts of interference with the construction by appellees of a bridge and asking the court to enjoin the doing of any act by appellants calculated to impede or hinder

the work. On the same day, the court issued a preliminary injunction, ex parte, expressly enjoining all picketing by appellants and, in effect, enjoining the doing of any act by them whatever, whether legal or illegal, to hinder or delay the erection of the bridge. Appellants filed a motion to dissolve the preliminary injunction, which was refused, and they then filed an answer, denying the material averments of fact contained in the bill. After hearing upon the bill and answer, the court below concluded that the preliminary injunction was "broader in its terms than might be necessary in a labor dispute" and entered a decree nisi modifying the injunction to permit appellants eight pickets, two on each sidewalk at the approaches to the bridge. Appellants filed numerous exceptions, all of which were dismissed by the court en banc, and the decree nisi was made final. This appeal followed.

Appellees are co-partners, trading as the Pine Brooks Iron Works, and have been engaged since March 27, 1941, in construction of a public bridge, known as Lackawanna Avenue Bridge, under a general contract entered into with the city of Scranton on March 12, 1941. On March 25, 1941, two days before the work commenced, appellees made an agreement with the United Construction Workers' Organizing Committee, Local 147, an affiliate of the Congress of Industrial Organizations, governing wages and terms of employment of workers proposed to be hired for the project, and on March 27, 1941, commenced work using employees supplied by the Committee exclusively. The appellant Council, an affiliate of the American Federation of Labor, immediately began picketing, claiming that the use by appellees of Committee members was in violation of subsisting written and oral contracts whereby appellees had agreed to employ only persons supplied by it, at wages substantially higher than those provided for by the agreement with the Committee, and that the latter agreement was entered into by appellees, without notice, pending ne-

gotiations with the Council, which had theretofore supplied all workers employed by appellees, as to whether wages should be paid according to the scale applicable to "heavy construction work contracts" or that applicable to "standard construction contracts". On April 1, 1941, the Council sent some of its members, headed by five of appellants, to the scene of the bridge construction and they induced the workers to drop their tools and leave the job, by picketing which the court below found was peaceful, law-abiding and without any threat or breach of the peace. On April 2nd, the day the ex parte preliminary injunction issued, a large number of pickets, found by the court below to have been fifty-six, collected at an entrance to the bridge where they were stopped by two policemen, who had been sent to the scene at appellees' request. While the appellant Downes, president of the Council, was engaged in a discussion with one of the officers, as to the right of an organizer for the Congress of Industrial Organizations to be upon the bridge, one of the pickets entered the bridge and a fight ensued between the picket and the organizer. Thereupon a number of the other pickets rushed onto the bridge, where they were met by the workmen in a general scuffle, lasting about five minutes, as a result of which three persons (all members of the appellant Council) were taken for medical treatment. These are, in substance, the findings of fact upon which the decree of the court was issued, and the question is presented whether they form a sufficient basis for injunctive relief in view of the provisions of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, as amended by the Act of June 9, 1939, P. L. 302.

It is conceded that the present controversy is one involving or growing out of a "labor dispute" within the meaning of that phrase as broadly defined by the Labor Anti-Injunction Act. See *Alliance Auto Service, Inc., v. Cohen,* 341 Pa. 283. Section 4 of the Act declares that "no court of this Commonwealth shall have juris-

diction to issue *any* restraining order or temporary or permanent injunction in a case included within this act, *except in strict conformity with the provisions of this act"*. Section 9 provides that no court shall issue *"any"* restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute", except after a hearing of a described character "and except after findings of fact by the court" (a) that unlawful acts have been threatened and *will be committed unless restrained,* or have been committed and *will be continued unless restrained,* (b) that substantial and irreparable injury to complainant's property will follow unless the relief requested is granted, (c) that, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief, (d) that no item of relief granted is relief which is prohibited by section 6 of the Act[1], (e) that complainant has no adequate remedy at law, and (f) that the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection. The court below made none of these findings, save that on

---

[1] Section 6 deprives the courts of jurisdiction to enter injunctions in labor disputes prohibiting persons from doing, *"whether singly or in concert with others"*, certain enumerated acts, classified under fourteen subsections, (a) to (n) inclusive. Among these are: "(e) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts or merits involved in, any labor dispute, whether by advertising, speaking or *picketing or patrolling* any public street or place where any person or persons may lawfully be, or by any other method not involving misrepresentation, fraud, duress, violence, breach of the peace or threat thereof . . . (j) *Assembling peaceably* to do, or to organize to do, any of the acts heretofore specified, or to promote their lawful interests". Under substantially identical language, contained in section 4 of the Norris-La Guardia Act of March 23, 1932, c. 90, 47 Stat. 70, it has been held that if the picketing is peaceful, unaccompanied by acts of violence, irrespective of whether it may be mass picketing, it cannot be enjoined by a Federal court. See *Wilson & Co. v. Birl*, 105 F.(2d) 948.

one occasion unlawful acts of violence had been committed. Moreover, the court failed to find that appellees had complied with section 11 of the Act, requiring that an employer make every reasonable effort to settle a labor dispute before being entitled to injunctive relief. In the absence of the complete findings which the Act makes prerequisite to the issuance of *"any* restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute", the court below was without power to issue an injunction and in so doing exceeded its jurisdiction in such cases, as specifically limited by the Act.

The facts upon the basis of which the injunction in the instant case was issued do not bring appellees within the amendatory Act of June 9, 1939, P. L. 302, exempting from the operation of the Act of 1937 cases involving a labor dispute "in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employees for the purpose of collective bargaining." The purpose of this amendment is to afford protection to an employer who has entered into a labor agreement with his employees or their bargaining representatives, which is admittedly valid and subsisting when a labor dispute in violation of its terms arises, and who has not, during the term of the agreement, committed "an unfair labor practice or violated any of the terms of said agreement"; it was not intended to permit an employer to terminate or avoid a labor dispute by refusing to recognize or bargain with his disputants and exempt himself from operation of the Anti-Injunction Act by the simple expedient of entering into an agreement with another association of employees. See *Tankin v. Hotel & Restaurant Workers Ind. Union,* 36 D. & C. 537.

The decree is reversed and the record is remitted to the court below for further proceedings in conformity with this opinion. Costs to be paid by appellees.