## DeLuxe Game Corporation v. United Steel Workers of America et al.

*Arthur Silverblatt*, for plaintiff.

*Frank P. Lenahan* and *Nelson A. Bryan*, for defendants.

PINOLA, J., May 25, 1951.—Plaintiff has filed a bill to restrain the United Steel Workers of America, Congress of Industrial Organizations, two of its staff rep-

resentatives and any agents from picketing its place of business, intimidating or otherwise molesting its employes or customers or persons seeking access to or egress from its place of business, and from advising its employes to breach their contract with plaintiff by advising them to strike. The employes are not made defendants and no relief is sought as to them.

A hearing was held to determine whether a preliminary injunction should issue.

The union officials admit that they met with the striking employes on several occasions, that on their behalf they petitioned the National Labor Relations Board for decertification of the American Federation of Labor as bargaining agent, and that they permitted the striking employes to sign applications for membership in the Steel Workers Union. They claim they are withholding action on the applications until they first determine whether there exists between the employes and plaintiff a valid agreement, it being the contention of some of the employes that the alleged contract with the employer had never been ratified by the employes.

The employes walked out on Monday, May 7, 1951, and the next morning they met with the two staff representatives of the Steel Workers Union and a field representative of the CIO. These gentlemen with a committee of employes visited the plant of plaintiff in the afternoon, where they sought an interview with its president. The representatives testified that they went for the purpose of determining whether the existing contract was valid. On the other hand, the employes testified that they went to request a meeting for the purpose of adjusting existing grievances which had been ignored by the officials of Local 56. The president did not see the group. Whereupon, on the same day, the two staff representatives and the field agent of the CIO, by registered letter, notified plaintiff, through its presi-

dent, of their visit, its purpose, and their willingness to meet with him at his convenience.

The strike has continued, and Frank Vrataric, the CIO representative, has not only actively participated in the picketing, but he furnished all of the signs carried by the pickets.

The plaintiff contends that the employes have stopped work in violation of a "no strike clause" in the agreement, that the picketing has been accompanied by violence, and that the pickets have been counseled by the Steel Workers representatives who are engaged in a contest or raid "to gain representation of plaintiff's employes". Therefore, it argues a jurisdictional dispute has resulted.

From the evidence, we make the following

### Findings of Fact

1. At an election held May 18, 1950, under the supervision of the National Labor Relations Board, the employes selected as their bargaining agent, the American Federation of Labor.

2. On May 26, 1950, the National Labor Relations Board certified the American Federation of Labor as "the exclusive representative of all the employees . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment."

3. Thereafter, the International Jewelry Workers Union, an affiliate of the American Federation of Labor, granted to plaintiff's employes a charter for "Local 56 Toy and Game Workers Union."

4. The duly elected officers of Local 56, following negotiations conducted by a negotiating committee of the local, concluded and entered into a contract with the employer on August 22, 1950, dealing with wages, vacations and other customary subjects.

5. The International Jewelry Workers Union, by its vice president, William G. Serota, who took part in

the negotiations, approved the contract and signed the same on behalf of his union.

6. The employer and employes operated under the contract until May 7, 1951.

7. On May 7, 1951, without warning of any kind, the employes walked out and they have continued in their work stoppage since that date.

8. The picketing of the employes has been peaceful.

9. The walk-out or strike of the employes is in violation of paragraph 14 of their agreement, which reads as follows:

"There shall be no stoppage or cessation of work in the shop or any department thereof. There shall be no strike, lock-out, sympathy strike or publication of any grievance whatsoever during the term of this agreement and all grievances and controversies shall be referred to arbitration in the manner set forth hereinabove."

10. Frank Vrataric, a field representative of the CIO, has actively participated in the picketing of plaintiff's plant.

11. The pickets have carried banners furnished by Frank Vrataric containing the following legends:

"We are for human treatment.

"We don't want bosses to dominate us and tell us what Union to belong to.

"We are against starvation wages."

12. On May 8, 1951, Thomas J. Cann, Patrick W. Shovlin, Frank Vrataric, and a group of employes visited the office of plaintiff company, but they did not make known the purpose of their visit.

13. By letter dated May 8th the staff representatives of the Steel Workers Union and the field representative of the CIO advised plaintiff of the visit to the company's office on that date and expressed a willingness to meet with plaintiff "for the purpose of ar-

ranging a conference on the dispute existing at the present time with your employes."

14. All of the employes of plaintiff company are members of Local Union 56.

15. All employes are on strike except the officials of the union.

16. Under paragraph 1 of the agreement:

"The company recognizes the union as the sole collective bargaining agent for all of its employees for the term of this agreement."

17. Under paragraph 8 of the agreement any grievance which cannot be settled between labor and management representatives "shall be referred to arbitration. . . . The decision of the arbitrator shall be final and binding and both parties agree to abide by and faithfully perform the same."

### Discussion

The Act of June 9, 1939, P. L. 302, sec. 1, 43 PS §206 (d), amended the Act of June 2, 1937, P. L. 1198, by providing specifically that it should not apply in any case:

"(a) Involving a labor dispute, as defined herein, which is in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining, as defined and provided for in the act," nor,

"(b) . . . where two or more labor organizations are competing for membership of the employes, and any labor organization or any of its officers, agents, representatives, employes, or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization."

We are satisfied that the facts here present a case under these provisions of the Act of 1939. Equity has jurisdiction in labor dispute cases to enjoin actions by a party to a labor dispute which tend to procure the breach of a valid agreement entered into by collective bargaining between an employer and authorized representatives of the employes: De Wilde et al. v. Scranton Building Trades, etc., 343 Pa. 224, 229.

Considering the merits, plaintiff contends that it is required under its contract to deal only with Local 56 Toy and Game Workers Union, and therefore, it is powerless to accede to any demands of the Steel Workers Union to deal or bargain with it as representative of the employes.

The Steel Workers Union, on the other hand, contends that under section 9 (a) of the National Labor Relations Act, 49 Stat. at L. 453, 29 U.S.C. 159 (a), "Any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided, further, that the bargaining representative has been given opportunity to be present at such adjustment."

The employes, who are all members of Local Union 56, have been working under the provisions of the existing agreement entered into between their union and plaintiff on August 22, 1950. They were not satisfied with the way grievances were handled by the officers of their union and walked out. After consultation with staff representatives of the Steel Workers Union and on the advice of the field representative of the CIO, they sought the meeting with plaintiff. The staff representatives testified that the meeting was asked simply for the purpose of determining whether a valid agree-

ment existed between Local 56 and the workers. They added that it was not their intention to process the applications for membership unless it appeared that the contract was not valid.

Recently (May 15, 1951), the court held in General Building Contractors' Association et al., v. Local Unions Nos. 542, etc. (C. P. No. 5, Philadelphia County), that the unions were precluded from questioning the right of their attorney to sign an agreement. The existing agreement was to expire on May 1, 1950. On April 14 a supplementary agreement was signed extending the existing agreement for a period of two years in consideration of the creation by the employers of a welfare fund. The parties carried on under the terms of the agreement until October 11, 1950, when the union attempted to repudiate the agreement but to retain the advantages of the welfare provisions thereof. Smith, P. J., quoted from Bredin v. Dubarry, 14 S. & R. 27, as follows:

"A principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own. He is bound to disavow it the first moment the fact comes to his knowledge."

And he concluded:

"Underwood (President and Business Manager) cannot remain silent at all times since May 1, 1950, to October 11, 1950, without being bound by the extension agreement. Section 43 of the Restatement of the Law of Agency, provides: 'Acquiescence by the principal in the conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance'. . . . It was a binding agreement and as such should be enforced by the court. It is just

as important to labor unions as well as employers that this agreement should be enforced."

Here the employes had operated under the contract from August 22, 1950, to May 7, 1951. Agreeing with Judge Smith, we hold that they cannot question the validity of the contract, and that being so, it follows that the officials of the Steel Workers Union cannot question it.

The request of the staff representatives and the field agent for a conference to consider any grievances places plaintiff in a dilemma, because in Miami Copper Co., etc., 92 N.L.R.B. 72, the board approved the findings of a trial examiner who had found that an employer violated section 8(a) (1) and (5) of the act by adjusting grievances with a minority union in disregard of the majority union's certification and also that it had deprived the certified representatives of an opportunity to be present at the adjustment of a grievance. On the other hand, in Douds v. Local 1250, etc., 173 F. (2d) 764, Judge Hand held that under the National Labor Relations Act, section 9(a), as amended, 29 U.S.C. §159(a), although an exclusive representative for collective bargaining has been selected, employes retain their common-law right to bargain for themselves, singly or collectively, insofar as the contract leaves open any point in dispute. Since the matter of reinstatement was not covered by the agreement, he concluded it was not "an unfair labor practice" for agents of a local to try to induce other employes to strike, as a sanction upon the employer to compel him to reinstate former employes. Judge Hand said (page 770) :

"The purpose of subsection (C) was to protect both the certified agent and the employer from interference by an outside union in the discharge of the certified agent's bargaining authority; but in so far as he has not exercised it, the relative rights of employer and

employed remain what they were, including the right of the employed to choose whom they will to represent them. Read thus, what section 8(b)(4)(C) forbade in the case at bar was: striking or inducing others to strike, (1) in order to force the employer to recognize the Local as the bargaining agent for the 'unit'; or (2), in order to force the employer to 'adjust' any 'grievance' which the certified agent had already 'adjusted' by a collective agreement. Neither of these were proved against the local."

While it is true that some of the workers testified that the grievances had to do with inadequate toilet facilities and wages, their new representatives did not disclose the subject of the grievance, and the employer would, if it met with them, do so at its peril. And yet, having failed to meet with them, it now suffers from a damaging strike. Such a situation calls for relief.

From the facts, we reach the following

### Conclusions of Law

1. The picketing of plaintiff's premises by Frank Vrataric, agent of the Steel Workers Union, is illegal.

2. The acts of the staff representatives of the Steel Workers Union in giving advice to and coöperating with plaintiff's employes in furtherance of the existing strike constitute an unfair labor practice.

Accordingly, we enter the following

### Order

Now, May 25, 1951, upon consideration of all the testimony, it is ordered, adjudged and decreed that a preliminary injunction issue, upon security being entered in the sum of $1,000, enjoining and restraining the United States Steel Workers of America, CIO; Thomas J. Cann, staff representative; Patrick W. Shovlin, staff representative, and Frank Vrataric, its agent, until final hearing:

(a) From picketing plaintiff's business premises at 239 Schuyler Avenue, Kingston, Pa.;

(b) from intimidating, molesting or accosting plaintiff's employes, tradesmen, customers or other persons seeking access to or egress from plaintiff's place of business; and,

(c) from instigating, advising and inducing plaintiff's employes to breach their contract with plaintiff by advising them to continue the strike now in effect.