Wortex Mills, Inc. *v.* Textile Workers Union of America, C. I. O., Appellants.

Argued November 26, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

360 

 reargument refused February 6, 1952.

*Jerome L. Markovitz,* for appellants.

*Paul Brandeis,* with him *Goff & Rubin,* for appellee.

OPINION BY MR. JUSTICE BELL, January 7, 1952:

Defendants appeal from a decree which restrained and enjoined their picketing. The chancellor found, either separately or in his opinion, the following facts:

The plaintiff, a Pennsylvania corporation, manufactures and deals with wool and woolen goods at its principal place of business on the second floor of a building situate at Adams Avenue and Leiper Street, Philadelphia, Pennsylvania. It has 38 employes, none of whom are members of any union nor affiliated with the defendant unions; and there was no strike or labor dispute of any kind between plaintiff and its employes.

The defendant unions are out on a strike with textile manufacturers, other than the plaintiff, in connection with some bargaining arrangements. They have no labor contract with plaintiff or its employes and no proposed contract has been submitted by defendants for the employes of the plaintiff.

The entrance into the building where plaintiff's plant is located consists of a *three foot wide doorway.* This doorway is not the means of ingress or egress to any other business conducted in said building.

On February 19, 1951, members of the defendant unions started to picket the three foot wide entrance of plaintiff's plant, causing most of the employes to have to push their way through the picket line and the rest to refuse to enter.

On February 22, 1951, a double line of 150 pickets congregated at this doorway and had an automobile on the street with a loudspeaker which said "Why go into that two-bit concern? They will fold in a year".

On February 23, 1951, the pickets of the defendant unions again congregated about the entrance of plaintiff's plant and threatened plaintiff's employes. Most of the employes pushed their way into the plant but many of them were afraid to work as a result of the threats and intimidations of the defendants. There were, however, no acts of violence.

On February 26th plaintiff's bill of complaint and rule for a preliminary injunction was filed. On that day and the next day there were 25 pickets at the three foot wide entrance to plaintiff's plant; the rest of the week, 10 pickets.

The defendant unions also picketed the loading platform at the rear of the building so that truck drivers who were members of other unions refused to unload trucks delivering goods. The defendants likewise interfered with the delivery of raw materials to be used in part for the manufacture of cloth for the Army and Navy.

During the first week of the picketing the production of the plaintiff's plant was reduced by 90 percent of its output and in the second week by 85 percent.

The chancellor further said: "The unions have called a general strike in the textile field, and in an effort to induce the employes of the plaintiff to become members of the defendant unions and to force the plaintiff to conduct a closed shop a picket line has been

thrown about the plaintiff's plant since February 19, 1951. While the picketing of the plant has produced no acts of violence, acts of intimidation by the assembling of a considerable number of pickets [together with name calling and threats] . . . the necessity of the employes to force their way through the picket line, the fear manifested by some of the employes, and the refusal of union truck drivers to unload material at the plant together with substantial damage to the business of the plaintiff show that the defendants have conducted themselves contrary to law."

The chancellor made the following conclusions of law:

1. There is no labor dispute between the plaintiff and the defendants.

2. The employes of the plaintiff have a legal right to refuse to join a labor union.

3. The course of conduct of the defendants was intended to coerce the plaintiff to require its employes to become members of the defendant unions.

4. Peaceful picketing by the defendants is coercive when its intent is to force the plaintiff to require its employes to become members of the defendant union.

5. The coercion of the plaintiff caused it to suffer substantial business losses.

6. The picketing of the plaintiff's plant is unlawful.

7. Equity has jurisdiction in this case.

Defendants contend that (1) their picketing was peaceful; (2) peaceful picketing is lawful when its intent is to organize employes into a union; (3) the fact that picketing results in substantial loss and damage to the employer is immaterial and of no moment; (4) Congress has taken exclusive jurisdiction of the field of labor industrial relationships and therefore equity has no jurisdiction to issue an injunction; and (5) even if equity has injunctive jurisdiction, the

Pennsylvania Labor Relations Act on which it must be predicated, was not complied with.

The defendants' first contention is clearly without merit—mass picketing is illegal; coercion, intimidation and threats are illegal; and where these exist it can not be successfully contended that the picketing was peaceful: *Westinghouse Electric Corp. v. United Electrical Workers*, 353 Pa. 446, 457, 46 A. 2d 16; *Kirmse v. Adler*, 311 Pa. 78, 166 A. 566; *Carnegie-Illinois Steel Corp. v. U.S.W. of A.*, 353 Pa. 420, 45 A. 2d 857.

Picketing is a form of assembly and of speech and consequently comes within the First Amendment to the Constitution of the United States and within Article I, § 7 of the Constitution of the Commonwealth of Pennsylvania, both of which guarantee freedom of speech: *Thornhill v. Alabama*, 310 U.S. 88; *Carlson v. California*, 310 U.S. 106; *Westinghouse Electric Corp. v. United Electrical Workers*, 353 Pa. 446, 46 A. 2d 16; *Pennsylvania L.R. Board v. Bartenders Union*, 361 Pa. 246, 64 A. 2d 834. But that does not mean that every kind of speech and every kind of picketing is lawful. Freedom of speech is not absolute or unlimited—for example, a man may not slander or libel another; he may not publicly blaspheme the Deity; he may not engage in loud speaking through sound trucks during certain hours or in certain parts of a city; and he may not assemble with others to commit a breach of the peace or to incite to riot or to advocate the commission of crimes. Freedom of speech gives no right of intimidation or coercion and no right to damage or injure another's business or property, except where this results indirectly from peaceful and orderly picketing for a purpose which the law regards as legitimate and lawful.

In the light of the mass picketing, threats and intimidation, it seems strange that anyone should contend

that a State Court is powerless to issue an injunction. It is well to recall that a State or other Sovereign has a paramount right and an inescapable duty to maintain law and order, to protect life, liberty and property and to enact laws and police regulations for the protection and preservation of the safety, health and welfare of the people of the state or community; *Carnegie-Illinois Steel Corp. v. U.S.W. of A.*, 353 Pa. 420, 426, 45 A. 2d 857; *Westinghouse Electric Corp. v. United Electrical Workers*, 353 Pa. 446, 460, 46 A. 2d 16.

"The power and duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted": *Thornhill v. Alabama*, 310 U.S. 88, 105; *Carlson v. California*, 310 U.S. 106, 113. The sovereign powers of a State should be protected and sustained except where restricted by the Federal or State Constitution and except where "an 'intention of Congress to exclude States from exerting their police power [is] clearly manifested.' Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, and cases cited; Kelly v. Washington, 302 U.S. 1, 10; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177; H. P. Welch Co. v. New Hampshire, 306 U.S. 79, 85; Maurer v. Hamilton, 309 U.S. 598, 614; Watson v. Buck, supra": *Allen-Bradley Local v. Wisconsin E. R. Board*, 315 U.S. 740, 749.

The authorities clearly and specifically dispose of and refute defendants' contentions that a State Court (a) cannot enjoin picketing because Congress has taken exclusive jurisdiction of the labor industrial relations field; and (b) cannot enjoin a violation of the Pennsylvania Labor Relations Act; and (c) that the requirements of that Act were not met.

In *Hughes v. Superior Court of California*, 339 U.S. 460, the Supreme Court of the United States upheld the use of an *injunction* issued by a State Court *to prohibit peaceful picketing* (in order to secure com-

pliance with the union's demand that its employes be in proportion to the racial origin of its then customers), *in violation of the policy of a State.* Speaking through Mr. Justice FRANKFURTER, the Court said (pages 464-466): "*Second.* ' [T]he domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states,' Palko v. Connecticut, 302 U.S. 319, 327, no doubt includes liberty of thought and appropriate means for expressing it. But while picketing is a mode of communication it is inseparably something more and different. *Industrial picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another,*\* quite irrespective of the nature of the ideas which are being disseminated.' Mr. Justice DOUGLAS, joined by BLACK and MURPHY, JJ., concurring in Bakery & Pastry Drivers & Helpers Local v. Wohl, 315 U.S. 769, 775, 776. . . . It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivelent. *Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for it disallowance.* See Dorchy v. Kansas, 272 U.S. 306; Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 U.S. 287; Hotel and Restaurant Employees' International Alliance v. Wisconsin E.R.B., 315 U.S. 437; Carpenters & Joiners Union v. Ritter's Cafe, 315 U.S. 722; Giboney v. Empire Storage & Ice Co., 336 U.S. 490. '*A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.*' Bakery & Pastry Drivers & Helpers Local v. Wohl, supra at 775."

In *Allen-Bradley Local v. Wisconsin E.R. Board,* 315 U.S. 740, a State statute was declared constitutional

---

\* Italics throughout, ours.

and an injunction sustained which prohibited mass picketing, threatening employes with physical injury or property damage, obstructing entrance to or egress from the company's factory, obstructing the streets or public roads surrounding the factory, and picketing the homes of employes. The Supreme Court specifically held that the Federal Act did not preclude a State from enacting such legislation.

Picketing is not protected by the Federal Constitution and may be enjoined by a State Court where the picketing is for the purpose of compelling an employer to violate a penal statute: *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 69 S. Ct. 684; or to violate the public policy of a state, statutorily or judicially declared: *Building Service Union v. Gazzam*, 339 U.S. 532, 70 S. Ct. 784; *Hughes v. Superior Court of California*, 339 U.S. 460; *Carpenters & Joiners Union v. Ritter's Cafe*, 315 U.S. 722; *Wilbank v. Chester & Delaware Counties Bartenders, etc., Union*, 360 Pa. 48, 60 A. 2d 21; or where its objective will cause a violation of a State's Anti-Trust Act: *Carpenters Union v. Ritter's Cafe*, 315 U.S. 722; or where picketing is conducted by a union to force a closed shop: *Phillips v. United Brotherhood of Carpenters, etc.*, 362 Pa. 78, 66 A. 2d 227; or where it is conducted with violence or by a sit-down strike or by a similar technique: *Labor Board v. Fansteel Corp.*, 306 U.S. 240; *Westinghouse Electric Corp. v. United Electrical etc.*, 353 Pa. 446, 46 A. 2d 16; *Carnegie-Illinois Steel Corp. v. U.S.W. of A.*, 353 Pa. 420, 45 A. 2d 857; or where it is enmeshed in a context of violence: *Drivers Union, etc. v. Meadowmoor, etc.*, 312 U.S. 287.

On the other hand, peaceful picketing cannot be forbidden or enjoined merely because there is no immediate employer-employe dispute, or merely because those who are enjoined were not employes of or were

strangers to the employer: *A. F. of L. v. Swing,* 312
U.S. 321; or merely because an employer's only em-
ploye was his wife and very occasionally a part-time
helper: *Friedman v. Blumberg,* 342 Pa. 387, 23 A. 2d
412; or merely because the business picketed was con-
ducted without the aid of any employes: *Cafeteria
Employees Union v. Angelos,* 320 U.S. 293. Moreover,
if a state statute prohibits or makes illegal what Con-
gress has authorized, the Act of Congress is of course
supreme. " '. . . if Congress has protected the union con-
duct which the state has forbidden . . . the state legisla-
tion must yield": *Automobile Workers v. O'Brien,* 339
U.S. 454, 459.

What Mr. Justice STERN said in *Phillips v. United
Brotherhood,* 362 Pa. 78, 81, 66 A. 2d 227, is particu-
larly appropriate in this case: "The question arises,
therefore, whether a labor organization can properly be
allowed to picket an establishment in order to coerce
the employer into an action which is made an unfair
labor practice and therefore forbidden by a statute of
the Commonwealth. . . . The court below refused a
permanent injunction *under the misapprehension that
peaceful picketing,* being a right which, generally speak-
ing, is constitutionally guaranteed as one of free speech,
*is necessarily and under all circumstances lawful,*
whereas, by the latest decisions of the United States
Supreme Court, of this Court, and of other jurisdictions,
it is well established that free speech is not involved
*where the labor objective is illegal* and that, under such
circumstances, *picketing may properly be enjoined.* . . .

"In Carpenters & Joiners Union of America, Local
No. 213, v. Ritter's Cafe, 315 U.S. 722, . . . the Court
said, (pp. 725, 726) that 'the circumstance that a
labor dispute is the occasion of exercising freedom of
expression does not give that freedom any greater
constitutional sanction or render it completely inviola-

ble. Where, as here, claims on behalf of free speech are met with claims on behalf of the authority of the state to impose reasonable regulations for the protection of the community as a whole, the duty of this Court [i.e. to sustain an injunction] is plain.' "

Several of the defendants' contentions were considered and rejected by this Court in *Wilbank v. Chester & Delaware Counties Bartenders, etc., Union*, 360 Pa. 48, 60 A. 2d 21. There, an injunction against picketing was sustained by this Court which, speaking through Mr. Justice LINN, said (pages 50-52) : "Defendants contend (1) that equity has no jurisdiction because the Labor Relations Act provides a remedy, (2) that as a proceeding was pending before the Labor Relations Board, comity required the dismissal of the bill, (3) that equity cannot enjoin peaceful picketing for organizational purposes, . . . .

"The controlling question is whether the picketing which was prohibited was for an unlawful purpose. If the purpose was unlawful the case presented was within the general equity jurisdiction of the court, unrestricted either by the Labor Anti-Injunction Act of 1937,* or by the Labor Relations Act of 1937,**. An injunction restraining unlawful picketing is not an infringement of the constitutional guaranty of free speech.

. . .

"Section 4 of the Labor Anti-Injunction Act of 1937,* was amended by the Act of June 9, 1939,*** providing that the prohibition against injunction 'shall not apply in any case . . . (b) Where a majority of the employes have not joined a labor organization . . .' which is the case here; [or] '(c) Where any person,

---

* P. L. 1198, 43 P.S. §206a, as amended in 1939, P. L. 302, 43 P.S. §206d.

** P. L. 1168, 43 P.S. §211.1.

*** P. L. 302, 43 P.S. §206(d).

association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935.'

"This record presents a case directly within the amendment restoring general equity jurisdiction. . . . Defendants' purpose in picketing was to require plaintiffs to force their employes to join the union. . . . Such a purpose is clearly unlawful and subject to restraint: see sec. 13, Act of June 16, 1836, P.L. 784, 12 PS §1221; 17 PS §§281, 282, 2082, and the Act of February 14, 1857, P. L. 39, 17 PS 283; compare Main C. & D. Inc. v. Columbia etc., 332 Pa. 71, 2 A. 2d 750. The exercise of this general equity jurisdiction is not restricted by the Labor Relations Act; nor is such an organized effort to force plaintiffs to violate the law excused by saying, as appellants' brief does, that the picketing was done 'solely for organizational purposes by persons engaged in the same trade . . .'."

Because several important Acts of Congress and State Statutes dealing with industrial relations and the rights of employes and employers are of such recent origin, the field of industrial relationship is not yet well marked nor its boundaries clearly defined. Nevertheless, the decisions up to this time may be thus summarized: *A State Court may enjoin unlawful picketing or picketing which is conducted in an unlawful manner or for an unlawful purpose. Picketing, if peaceful, orderly and for a legitimate or lawful purpose, is legal and within the protection of the Constitution. However a State is not required to tolerate in all places and in all circumstances even peaceful picketing by an individual; it is well established that the method or conduct or purpose or objective of the picketing may make even peaceful picketing illegal.*

Defendants contend that the decree of the lower court was too broad in that the chancellor restrained them "(d) from loitering or being unnecessarily in the vicinity of said entrance or place of ingress to or egress from said premises". We agree that this was not proper or justified and should be stricken from the decree. Cf. *Thornhill v. Alabama,* 310 U.S. 88.

Although the nationwide strike which caused this picketing was over, defendants requested this Court at oral argument to decide whether peaceful picketing for organizational purposes is legal. It is only in very rare cases where exceptional circumstances exist or where matters or questions of great public importance are involved, that this Court ever decides moot questions or erects guideposts for future conduct or actions. So far as this case is concerned, this question is moot. " 'Constitutional questions are not to be dealt with abstractly.' Bandini Petroleum Co. v. Superior Court, 284 U.S. 8, 22; Arizona v. California, 283 U.S. 423, 464. They will not be anticipated but will be dealt with only as they are approximately raised upon a record before us. Tennessee Publishing Co. v. American National Bank, 299 U.S. 18, 22": *Allen-Bradley Local v. Wisconsin E.R. Board,* 315 U. S. 740, 746.

We shall, therefore, merely decide that under the facts in this case and under all the authorities hereinabove quoted or referred to, the court below had jurisdiction to issue and was clearly right in issuing an injunction.

Decree as modified affirmed, at cost of appellants.