## Miller et al., etc., v. Distributive, Processing and Office Workers of America, District 76, et al.

*John Harper*, for plaintiffs.

*Saul C. Waldbaum* and *Morris Shafritz*, for defendants.

ALESSANDRONI, J., May 9, 1952. — This matter came on for hearing on a rule to show cause why the preliminary injunction requested by plaintiff should not be granted. The bill in equity seeks to restrain defendant union from picketing, hindering or obstructing ingress and egress to plaintiffs' business, and from interfering with plaintiffs' business and employes, by threats or intimidation.

After hearing, the court makes the following

### Findings of Fact

1. Plaintiffs, Samuel Miller and Sydney Goldstein, are copartners trading as Victory Shop, which sells women's lingerie and hosiery at retail. Their places

of business are located at the northeast corner of Eleventh and Sansom Streets, 26 South Tenth Street, and 15 South Eighth Street, all in Philadelphia, Pa.

2. Four salesgirls staff the three shops. On March 3, 1952, these employes became members of defendant union or its immediate predecessor.

3. Defendant, Distributive, Processing and Office Workers of America, District 76, is an unincorporated association functioning as a labor union; its principal place of business is at 1415 Locust Street, Philadelphia, Pa. Albert Brown is its president.

4. On March 8, 1952, defendant union organized a demonstration at the Eleventh and Sansom Streets store. Twenty-five members of the union entered the store in force and demanded that plaintiff Goldstein sign a contract with the union.

5. Except for a letter asking the employer to arrange a meeting, prior to such demonstration, no demand had been made on plaintiffs to sign a contract.

6. On March 13, 1952, the four employes manifested their desire to resign from the union. Albert Brown and Bernard Tolkow, an international organizer, dissuaded the girls from resigning. The dissuasion included threats of "blackball" from joining any other union and an expressed intent to prevent them from getting another job.

7. The four salesgirls, after being persuaded against resigning, made another payment of either dues and/or initiation fees to present defendant union.

8. On March 15, 1952, another demonstration was staged at Eleventh and Sansom Streets. This time approximately 50 members or aides of the union entered the shop. The open area of this shop for the accommodation of the public in the transaction of business was 4 feet, 10 inches by 25 feet long, exclusive of counters and shelves.

9. Samuel Miller, plaintiff, was accosted by Al Klein, an organizer for defendant union, who demanded that Miller sign a contract. Miller was prevented from calling the police.

10. On March 20, 1952, the four girls resigned from defendant union by despatching a registered letter to that effect. Bernard Tolkow informed Denise Judge, one of the girls, on learning of the intended resignations that "the union won't be held responsible for what happens if you drop out." On March 21, 1952, Al Klein told Miss Judge that "I would not like to have paint in my living-room."

11. The four employes resigned from the union voluntarily and without any inducements or promises on the part of plaintiffs. The reason given for the resignation was the employes' objection to the tactics of the union.

12. In addition to the demonstrations, the union had ordered the employes to do all that they could to discourage business, and dissatisfy customers.

13. Picketing started March 29, 1952. Pickets used vulgar language and Al Brown put the sign in the door and prevented entrance or exit.

14. Plaintiff, Sydney Goldstein, was told by one of the pickets, one Sam Moskow: "Fire the girls and we will walk off the picket line."

15. Morris Krentz, an organizer for defendant union, stated that picketing was directed against both employer and employes.

16. Defendant union has no members who are employes of the Victory Shop. Defendant offered no competent evidence to prove that the employers offered inducements to the employes in exchange for resignation from the union.

17. There is no labor dispute between District 76 of Distributive, Processing and Office Workers of

America and Victory Shop, and as a result of the picketing plaintiffs' business is suffering irreparable harm.

## Discussion

The theory of defendant is that a labor dispute exists. Defendant argues in effect that the four employes of the Victory Shop are still members of the union, though nominally they resigned, and that the resignations were accomplished by promises and inducements made by the employers. The fact that one of the defendants admitted that there was no proof or evidence of such promises and inducements apparently has been overlooked.

The basic reason for the resignations was not any promises or inducements made by the employers; on the contrary, it is clear that the resignations were the direct result of the activities and tactics of defendant union. The four girls in question joined the union of their own free will. No one can deny them the equal right to withdraw of their own volition. It may very well be inconceivable to defendants that their newly acquired members might have been moved to resign against the uncalled for tactics employed by union officers and agents. There is more than a probability that the employes would still be members of the union and a collective bargaining agreement negotiated to mutual advantage of the parties if the representaitves of the union had used methods better suited to the occasion.

It is clear that attempts were made to stampede the employers into signing an agreement. The demonstrations in mass with insistent demands that the contract be executed forthwith establish this fact. The employer was given no opportunity to negotiate; the alleged negotiations were put on a "you-take-it-or-leave-it" basis.

Having failed in its efforts to obtain a contract by the mass demonstration method the union resorted to threats directed at the employes. The "blackball" from any other union was one, "you will never be able to get another job", was another, so, also, "would you like paint in your living-room", and "the union will not be responsible for what happens to you". The attempts at intimidation also failed and the girls resigned.

The union now seeks to apply pressure against both the employer and the employes. This was admitted. Upon the employes, to compel them to rejoin the union; upon the employers, to exert pressure upon the employes to rejoin the union or suffer dismissal.

As we said in Matson Navigation Co. at el. v. Brotherhood of Marine Engineers et al., C. P. No. 5, September term, 1951, no. 580, The Legal Intelligencer, February 14, 1952: "Any reasonable man placed in the situation of this plaintiff, bearing the serious consequences visited upon his business, without any fault on his part, will take measures to protect himself. His only escape is pressure on the employes involved, to accede to the union's demands on them." Given the situation set forth above, the conclusion is inescapable.

It will not be necessary to review the recent cases dealing with unlawful picketing and with the provisions of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206a, as amended. The Matson Navigation Co. et al. v. Brotherhood of Marine Engineers et al. case, supra, has reviewed the field, as has Wortex Mills, Inc., v. Textile Workers of America et al., 369 Pa. 359. Section 206d(b) of the Act of 1937, as amended, 43 PS §206d(b) clearly covers the situation. It provides, inter alia:

"That this act shall not apply in any case—Where a majority of the employes have not joined a labor

organization, . . . and any labor organization . . . engages in a course (of) conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization."

The facts of the instant case fall squarely within the provisions of this section. No further amplification is needed. The constitutional question need only be mentioned in passing. The fact that a "labor dispute" is the occasion for the exercise of freedom of speech does not give that freedom any greater constitutional sanction or render it completely inviolable: Carpenters and Joiners Union of America, Local 213, v. Ritter's Cafe et al., 315 U. S. 722.

Accordingly we are of the opinion that plaintiffs have established the averments of the complaint and are entitled to the relief sought.

### Conclusions of Law

1. No labor dispute exists between Victory Shop and the Distributive, Processing and Office Workers of America, District 76.

2. The Labor Anti-Injunction Act of 1937, as amended, has no application in this case.

3. The picketing is not constitutionally protected as an exercise of free speech because it has an illegal purpose.

4. The illegal purpose is to force the employer to apply pressure to the employes so that the employes will rejoin the union.

5. The employes had the legal right to resign at will.

6. Plaintiff is entitled to the relief sought.

### Order

And now, to wit, May 9, 1952, plaintiffs' rule on defendant to show cause why a preliminary injunc-

tion should not issue is made absolute; and it appearing further from the evidence presented that immediate and irreparable loss and damage will result to plaintiffs before the matter can be heard and finally determined upon the merits, now, upon motion of counsel for plaintiffs, it is ordered, adjudged and decreed:

1. That a preliminary injunction issue enjoining and restraining the Distributive, Processing and Office Workers of America, District 76, and defendants, individually and as representatives of the union, their servants, agents and employes, as well as all members of the union, and all persons acting in concert with them or otherwise participating in their or on behalf of them or any of them, from:

(a) Picketing in any manner whatsoever, either individually or collectively, at any of plaintiffs' places of business, to wit, N. E. corner Eleventh and Sansom Streets, 15 South Eighth Street, and 26 South Tenth Street, Philadelphia, Pa., or otherwise picketing plaintiffs at any other places within the County of Philadelphia, State of Pennsylvania.

(b) Hindering or obstructing, or attempting to hinder or obstruct, ingress to or egress from plaintiffs' places of business, plaintiffs, their employes, their customers, or any others having business with plaintiffs.

(c) Intimidating, threatening or attempting to intimidate or threaten, plaintiffs' employes, or attempting to interfere with the operation of plaintiffs' business, and from loitering or being unnecessarily in the entrance to plaintiffs' places of business.

2. That this injunction is to take effect upon plaintiffs entering an injunction bond in the sum of $500; said bond to continue until final hearing.