National Baptist Convention, United States of America, Inc. *v.* Taylor, Appellant.

Argued November 16, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Isaiah W. Crippins,* with him *Almanina B. Carnes,* for Taylor et al., defendants, appellants.

*Samuel Dashiell,* with him *Lawrence Prattis, Calvin T. Wilson, Charles L. Durham,* and *Benjamin Hooks,* of the Tennessee Bar, *Joseph B. Williams,* of the New York Bar, for Anderson, plaintiff, appellant.

*A. Leon Higginbotham, Jr.,* with him *Austin Norris, Clifford Scott Green,* and *Norris, Green, Harris & Higginbotham,* and *Belford V. Lawson,* of the Washington, D.C. Bar, and *Benjamin F. Wilson,* of the Indiana Bar, for appellees.

OPINION BY MR. JUSTICE BOK, January 4, 1961:

These cases arise out of a convention of five thousand or more of plaintiff's membership that was held in Philadelphia, between September 6 and 11, 1960.

Plaintiff is a corporation organized and existing under the laws of the District of Columbia.

In the first case the complaint in equity, filed on September 9, averred that a small faction of the Convention, including the defendants, disrupted the meetings by yelling and screaming in the aisles and not only prevented the delivery of inspiring sermons but during an adjournment caused the election of defendants to the principal offices of the Convention despite the approval by full Convention vote of 3500 to 500 of a nominating committee's slate of officers; the defendants and their cohorts then made it impossible for Dr. Jackson, President of the Convention, to continue its business. The court below, also on September 9, granted the prayer of the complaint and issued a preliminary injunction upon affidavits, enjoining defendants from obstructive conduct and requiring a bond.

No hearing was held on this injunction within five days after granting it and hence it must be deemed to have dissolved, under Rule 1531 (d) of the Rules of Civil Procedure. It also became moot when the Convention adjourned on September 12, since by its terms it was pitched to the continuation of the Convention and had no life after. See *Wortex Mills v. Textile Workers' Union of America, CIO,* 369 Pa. 359 (1952), 85 A. 2d 851.

On September 12 defendants filed an answer and counterclaim, to which plaintiff filed preliminary objections. The court below sustained them, although it mistakenly referred to them as defendants' objections, and dismissed both the complaint, as moot, and the counterclaim, as raising a legal rather than an equitable position which in any event would involve the court in regulating or interfering with the internal affairs of a foreign corporation. The defendants appealed.

The answer and counterclaim raise the question of the validity of the election of defendants as officers and the status of Dr. Jackson as President of the Convention, who they assert is the real plaintiff and wants to maintain his presidency in perpetuity. Appellants want us to solve these questions for them under the theory of *Milasinovich v. Serbian Progressive Club*, 369 Pa. 26 (1951), 84 A. 2d 571, that when equity has taken jurisdiction for one purpose it will complete the job. The court below has properly disposed of this and the rest of appellants' arguments as follows: "Though equity is not the proper forum for this cause, it is customary in such situations to transfer the matter to the law side of the court to be tried as a writ of quo warranto (Siranovich case, supra [359 Pa. 134]). Yet this Court, because of the facts in this case, is unable to do so and must dismiss the second complaint and 'counterclaim'. The Act which authorizes quo warranto proceedings states that the writ may issue: 'In case any question shall arise concerning the exercise of any office, in any corporation, created by authority of law, and having the chief place of business within the respective county.' (Act of 1836, P. L. 621, §2, 12 PS §2022 III.) The Act appears to restrict itself to a corporation with its chief place of business in a particular Pennsylvania County. The Baptist Convention has no chief place of business in this County; its annual convention for 1960 was held in Philadelphia and that is all.

"The general rule is that while courts of one state have power to assume jurisdiction of actions by non-residents against foreign corporations, they will not ordinarily interfere in controversies relating merely to the internal management of the affairs of the foreign corporation. Wettengel v. Robinson, 288 Pa. 362; Cunliffe v. Consumers Association of America, 280 Pa. 263; Loan Society of Phila. v. Eavenson, 241 Pa. 65; Mad-

den v. Electric Light Co., 181 Pa. 617; Bailey v. Ancient Egyptian Arabic Order, 162 Pa. Superior Ct. 5. This is also the general rule in the United States, 20 C.J.S. 99 Corporations, §1879, and recently our Supreme Court held that: '. . . Pennsylvania courts will not take jurisdiction for the purpose of regulating or interfering with the internal management or affairs of a foreign corporation.' Plum v. Tampax, Inc., 399 Pa. 553, 558. One author puts it, 'The officers of a corporation can be removed from office for dereliction of duty or other cause only by the courts of the state by which the corporation was created. The courts of another state have no jurisdiction in such cases, as the question is one relating to the internal management of a foreign corporation. In accordance with the same principle, a court will not determine which of the rival claimants are the legal officers of a foreign corporation, or whether a person was regularly elected an officer of a foreign corporation. The courts of a state other than that by which a corporation was created will not undertake to set aside the election (sic) officers by such corporation.' Fletcher, supra, Vol. 17, §§8442, pp. 473-5 (1960 Rev. Vol.). See Standard Pa. Practice, Vol. 11, Quo Warranto §15, p. 250; Commonwealth v. Ripple et al., 28 Lack. Jur. 94, 97; Commonwealth v. Leisenring, 15 Phila. 215.

"In the instant case, the Baptist Convention is a District of Columbia corporation. The only contact this state had with it was that its annual convention was held in Philadelphia and service thus was obtained here. This fact does not sufficiently outweigh the principle that we refrain from interfering with the internal affairs of this corporation. No great hardship should result from this conclusion since the courts of the District of Columbia are open. Nor is the plight of the parties worsened from a geographic point of view. Many of the parties and proposed witnesses are not

Pennsylvanians and would find it as convenient or inconvenient to travel to Washington as to Philadelphia. Since there is no compelling reason to cause us to exercise our discretion and overlook the 'internal affairs rule' and since it would be a vain act to transfer the action to the law side only to have it dismissed there, we now sustain defendants' preliminary objections and dismiss both complaints and the 'counterclaim'."

Since the injunction was automatically dissolved and the merits within its embrasure are moot, and since the only preliminary objection was that of the plaintiff to the defendants' counterclaim, we take this to be the objection inadvertently referred to by the court below as "defendants' preliminary objections" and affirm the order sustaining it and dismissing the complaint and the counterclaim. Costs to be paid by appellants.

In the second case a complaint only was filed, alleging that plaintiff was a delegate to the Baptist Convention; that defendants had served as Treasurer and General Secretary, respectively, until the opening of the Convention, when they failed of re-election; that they were called upon to turn over the books and records of the Convention to their successors in office on demand following appropriate resolutions; and that the Convention is a corporation organized under the laws of the District of Columbia.

The court below enjoined defendants from acting as officers and from interfering or disposing of the books and records. Preliminary objections were filed and a hearing on both complaints was had. The court sustained the preliminary objections and dismissed the complaint in an opinion and by an order covering both complaints, since the legal issues were the same, excepting only that the issue over books and records in the second complaint did not fall moot with the end-

ing of the Convention. This issue is resolved, however, by the proper holding of the court below that, as in the matter of the first complaint, our courts will not regulate or interfere with the internal affairs of a foreign corporation.

Hence we affirm the dismissal of the second complaint, at the cost of the appellant.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

When a foreign corporation comes into our Commonwealth and invokes the jurisdiction of our courts of equity and secures a preliminary restraining order, it should not then be permitted to withdraw from the very jurisdiction that it invoked and thus defeat the power of our courts to do complete equity and justice for both litigants.

I also do not think the doctrine of forum non conveniens should bar a counterclaim against a foreign corporation which institutes suit in this jurisdiction. However, if a majority of my colleagues feel that the doctrine of forum non conveniens can be applied in such a situation they should, nevertheless, remand these cases so that the court below can make a correct finding as to whether the doctrine should be invoked in light of the particular facts of these cases. In *Plum v. Tampax, Inc.,* 399 Pa. 553, 160 A. 2d 549 (1960), when we reversed the ruling of the court below and remanded the case, we used the following language, "Proper application of the doctrine of Forum Non Conveniens necessitates that the court below make a *finding* as to the availability of other forums and then exercise its discretion after considering all the factors." (Emphasis supplied.) I fail to see how a valid finding could have been made or discretion properly exercised since the record fails to indicate that the court below

had before it any evidence of the factors which we held to be essential in such a determination, i.e., inter alia, the availability of an alternate forum, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of witnesses, and the problem of enforcing a judgment if one were obtained. Thus, *Plum v. Tampax, Inc.*, supra, clearly requires that we remand the cases to the court below.