**[J-85-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| JOBE DANGANAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | : No. 36 WAP 2017 |
| | : |
| | : Certification of Question of Law from the |
| | : United States Court of Appeals for the |
| | : Third Circuit in No. 16-3379 |
| Appellant | : |
| | : |
| | : |
| v. | : |
| | : |
| GUARDIAN PROTECTION SERVICES, | : |
| | : |
| Appellee | : |
| | : ARGUED: November 28, 2017 |

***OPINION***

**CHIEF JUSTICE SAYLOR**                    **DECIDED: FEBRUARY 21, 2018**

This matter presents issues of Pennsylvania law on certification from the United States Court of Appeals for the Third Circuit, centering on the reach of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL" or the "Law").[1]

## I. Background

The UTPCPL provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are . . . unlawful." 73 P.S. §201-3. The Law permits any "person" to bring a private action against any other "person" for violations of the statute. *Id.* §201-9.2(a). The UTPCPL defines "person" as "natural persons, corporations, trusts, partnerships, incorporated or

---

[1] Act of Dec. 17, 1968, P.L. 1224, No. 387 (as amended 73 P.S. §§201-1 to 201-9.3).

unincorporated associations, and any other legal entities," and the term is employed to describe both alleged victims and purported offenders. *Id.* §201-2(2). "Trade" and "commerce" are defined as

> the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

*Id.* §201-2(3).

This case has its genesis in Appellant Jobe Danganan's contracting with Appellee Guardian Protection Services ("Guardian"), a Pennsylvania-headquartered business, for home security equipment and services at his then home in Washington, D.C. The contract signed by Appellant, a standardized form agreement employed by Guardian, contained, *inter alia*, a choice-of-law provision, stating that the "Agreement shall be governed by the laws of Pennsylvania." Authorized Dealer Sales and Monitoring Agreement ("Agreement") ¶19, at 4. Another clause required that any suit or legal proceeding pertaining to the Agreement be brought in the other party's district or county of residence and mandated that the parties consent to jurisdiction in such venue. *See* Agreement ¶17, at 4.

Prior to the expiration of the Agreement's purported three-year initial term, Appellant moved to California and sold his Washington, D.C. house, notifying Guardian of his intent to cancel the contract and related home protection services. However, Guardian continued to bill Appellant, citing provisions of the Agreement that it claimed authorized ongoing charges through the contract's term, regardless of cancellation attempts. Appellant filed a complaint in the Court of Common Pleas of Philadelphia County on behalf of himself and a putative class of nationwide plaintiffs who were subject to the same form contract. His claims for relief were predicated exclusively on

Pennsylvania statutory grounds, namely, the UTPCPL and Pennsylvania's Fair Credit Extension Uniformity Act.[2]  Guardian sought removal to federal court on the basis of diversity jurisdiction, and the matter ultimately proceeded in the United States District Court for the Western District of Pennsylvania.

Thereafter, Guardian filed a motion to dismiss, arguing that Appellant had not, pursuant to the UTPCPL, demonstrated a "sufficient nexus" between the Commonwealth and the improper conduct alleged in the complaint.  *Wolfe v. McNeill-PPC, Inc.*, 773 F. Supp. 2d 561, 574-75 (E.D. Pa. 2011) (explaining that a sufficient nexus is required to maintain a UTPCPL claim and that prior decisions indicate that the Law only provides a remedy to Pennsylvania residents (citing *Haggart v. Endogastric Sols., Inc.*, No. 10–346, 2011 WL 466684, at *7 (W.D. Pa. Feb. 4, 2011); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Pa. 2006))).  The district court agreed, dismissing the case with prejudice.  *See Danganan v. Guardian Prot. Servs.*, 2016 WL 3977488, at *3 (W.D. Pa. July 25, 2016).

In its reasoning, the district court initially acknowledged that the UTPCPL is to be liberally construed to effectuate its purpose of preventing fraud and deceptive practices. *See Commonwealth by Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 459, 329 A.2d 812, 816 (1974).  However, the court deemed the Law restricted to protecting the citizens of Pennsylvania, misattributing that precept to this Court.  *See Danganan*, 2016 WL 3977488, at *2 (referring to *Commonwealth by Packel v. Ziomek*, 145 Pa. Cmwlth. 675, 680, 352 A.2d 235, 238 (1976) (original jurisdiction, single-judge opinion), as a decision of the Supreme Court of Pennsylvania).  Nevertheless, the court supported its view in this regard by reference to a number of federal district court decisions that had

---

[2] Act of March 28, 2000, P.L. 23, No. 7 (as amended 73 P.S. §§2270.1-2270.6). Appellant's claims under the Fair Credit Extension Uniformity Act are not presently pertinent.

determined that the Law did not generally permit recovery by non-residents, absent having engaged in a transaction within the state. *See, e.g.*, *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 570 (D.N.J. 2008); *Baker*, 440 F. Supp. 2d at 414; *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 213 (E.D. Pa. 2000).

The district court additionally concluded that Guardian's headquarters in Pennsylvania did not suffice to establish a sufficient nexus. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, Nos. 2007-MD-1871, 09-CV-730, 10-CV-2475, 10-CV-5419, 2013 WL 5761202, at *9 (E.D. Pa. Oct. 23, 2013) (holding that defendant's headquarters in Pennsylvania, where the purported misconduct was orchestrated and emanated from, did not support a cause of action under the UTPCPL by non-residents). Along this same line, the trial court rejected Appellant's claim that Guardian's drafting of the form Agreement and unreasonable interpretation of it at its Pennsylvania headquarters established sufficient contacts. Instead, the court suggested that Washington, D.C. and/or California constituted the sites of Appellant's alleged injuries.

Next, citing the Agreement's choice-of-law provision, the district court explained that it could not be employed to broaden the limited scope of the Law, assuming *arguendo* that the clause implicated the UTPCPL in the first instance. In this regard, the court emphasized that "trade" and "commerce," as defined in the UTPCPL, were "restricted to only apply to conduct which 'directly or indirectly affect[s] the people of this Commonwealth." *Danganan*, 2016 WL 3977488, at *3 (quoting 73 P.S. §201-2(3)) (alteration in original).

On appeal, the Third Circuit Court of Appeals sought certification to this Court concerning the potential residential and geographical restrictions of the UTPCPL. The Third Circuit explained that such issues have arisen previously in federal district and bankruptcy courts, *see* Petition for Certification of Question of State Law at 5-6

(collecting cases), but that there is a dearth of Pennsylvania state court decisions providing direction. The federal appellate court further observed that consumer protection claims are often raised in class action suits, which are frequently removed to federal court. We granted the request for certification of the following questions of state law, as framed by the Third Circuit:

> 1) Whether a non-Pennsylvania resident may bring suit under the [UTPCPL], against a business headquartered in and operating from Pennsylvania, based on transactions which occurred outside of Pennsylvania?
>
> 2) If the UTPCPL does not allow a non-Pennsylvania resident to invoke its protections, whether the parties can, through a choice-of-law provision, expand its protections to parties to the contract who are non-Pennsylvania resident consumers?

*Danganan v. Guardian Prot. Servs.*, __ Pa. __, 170 A.3d 981 (2017) (table) (alteration added).

## II. UTPCPL's Scope

As to the first issue, Appellant argues that, pursuant to the plain language of the UTPCPL, a non-resident may bring a claim against a Pennsylvania business premised on an out-of-state transaction, emphasizing that the definition of "person" lacks any geographic limitation or specification on residency. *See* 73 P.S. §201-2(2). He further notes that the term "person" is employed by the statute to reference both a consumer victim and merchant perpetrator. *See, e.g., id.* §201-9.2(a) ("Any person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss . . . as a result of the use or employment by any person of a method, act or practice declared unlawful . . . may bring a private action . . .."). Thus, he contends that it would be problematic to construe a complainant "person" as constituting only a resident, since such a restriction would necessarily apply to businesses as well, and consequently, the

Law would not protect Pennsylvanians who are victimized by out-of-state operations. *Cf. Haggart*, No. 10-0346, 2011 WL 466684, at *7 ("*[N]ot* applying the statute to nonresidents . . . would invite fraud upon nonresidents in transactions within the state." (emphasis in original) (quoting *Mikola v. Penn Lyon Homes, Inc.*, No. 07-612, 2008 WL 2357688, at *3 (M.D. Pa. June 4, 2008))). Appellant finds support for this view in the decision in *Cash America Net of Nevada, LLC v. Department of Banking*, 607 Pa. 432, 8 A.3d 282 (2010), in which the term "person," as used in the Consumer Discount Company Act, 7 P.S. §§6201-6219, was interpreted as encompassing non-resident businesses. *See Cash America*, 607 Pa. at 451, 8 A.3d at 293-94.

To the degree that "person" may be found ambiguous, *see, e.g.*, *Meyer v. Cmty. Coll. of Beaver Cty.*, 625 Pa. 563, 575-76, 93 A.3d 806, 814 (2104), Appellant references the interpretive considerations of the Statutory Construction Act, *see id.* (citing 1 Pa.C.S. §1921(c)), and opines that they support his interpretation of the Law. He further argues that the terms of the UTPCPL reflect its remedial nature, as well as the Legislature's intent to provide broad protections and deter misconduct predicated on the belief that competition best operates in the light of honest disclosures. *See, e.g.*, *id.* at 571-72, 93 A.3d at 811 (explaining that the UTPCPL was designed to close the "doctrinal gap" of the common law and "place the seller and consumer on more equal terms" (internal quotation marks and citation omitted)). Appellant also cites this Court's description of the Law as designed to "benefit the public at large by eradicating unfair or deceptive business practices [and] to ensure fairness of market transactions." *Monumental Props.*, 459 Pa. at 457-58, 470, 329 A.2d at 815-16, 822. In light of these objectives, he advances that the statute requires a liberal and pragmatic construction. *See id.* at 460, 329 A.2d at 817.

As for "trade" and "commerce," similar to his reasoning with respect to "person," Appellant observes that the definition of these terms lacks any residency or geographic restrictions. *See* 73 P.S. §201-2(3). From Appellant's perspective, the district court's limited construction, premised on the "directly or indirectly affecting the people of this Commonwealth" clause, contravenes the express language of the Law, which covers mercantile activity "wherever situate," and is, by its plain terms, broad so as to "include[]" conduct affecting Pennsylvanians. 73 P.S. §201-2(3). Further contrasting with the district court's view, he contends that the use of "includes" signals that the trade or commerce encompassed by the UTPCPL may occur outside of the state, since it need only impact, directly or indirectly, the Commonwealth's citizenry. In this respect, he again draws a parallel to the non-residential business operation at issue in *Cash America*.

Appellant cites several cases to support his broad-application view of the Law, particularly emphasizing *Thornell v. Seattle Service Bureau, Inc.*, 363 P.3d 587 (Wash. 2015).[3] In that case, a Texas resident brought a claim against a Washington-headquartered collection agent, alleging the use of deceptive practices proscribed by Washington's consumer protection law.[4] In determining whether a non-resident lacking connections to the state could maintain the action, the Washington Supreme Court highlighted the "broadly worded" definitions for "person" and "commerce," the latter of

---

[3] Many of the cases referenced by Appellant involve transactions that occurred within the subject state and, thus, are of little support to his extraterritorial construction. *See, e.g.*, *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 546 (D.N.J. 1998).

[4] Mirroring the present circumstances, the plaintiff in *Thornell* initially filed her class action suit in Washington state court, only to have it removed to federal court, which ultimately resulted in questions of law certified to the Washington Supreme Court.

which included reference to "any commerce directly or indirectly affecting the people of the state of Washington." *Id.* at 590 (quoting WASH. REV. CODE §19.86.010(1), (2)).[5]

The Washington court explained that the "indirectly affecting" aspect of the commerce definition, along with the liberal construction and statutory purpose to foster "fair and honest competition," *see id.* at 591 (quoting WASH. REV. CODE §19.86.920), required interpreting the statute as protecting non-residents. In this respect, the court reasoned that, if out-of-state citizens could not forward claims against Washington-based entities, "[h]onest businesses could be placed at a competitive *disadvantage* competing against a business that generates revenue from unlawful acts that violate the statute." *Id.* (emphasis in original); *see also id.* ("[T]he commerce and trade [that the abusive company] brings into Washington, and the alleged unfair and dishonest method by which it does so, affects the state economy and thus affects the Washington public at large." (quoting *Schall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 143 (Wash. 2011) (Sander, J., dissenting))). Appellant contends that the *Thornell* court's reasoning is on all fours with the present matter, given the similarity in the definitions of the pertinent terms and the paralleling remedial purposes and liberal interpretation required by the statutes.

Relative to the sufficient nexus test, Appellant highlights that the UTPCPL does not employ that term and emphasizes again that there is no textual basis mandating such a test or any residency or geographical limitations. He further criticizes, as

---

[5] The Washington statute's definitions for "person" and "trade" and "commerce" closely parallel the UTPCPL's definitions of these terms. *Compare* WASH. REV. CODE §19.86.010(1), (2), *with* 73 P.S. §201-2(2), (3).

excessively limiting and ambiguously defined, Guardian's proffer that the sufficient nexus test requires a primary and substantial connection to the state.[6]

As for Guardian's complaint that Appellant's view would permit anyone anywhere to advance a claim under the UTPCPL, he observes that choice-of-law rules and jurisdictional principles may operate as limitations on statutory causes of action relative to the parties' residency.[7] In this respect, he develops that, in circumstances such as are present here, the federal trial courts should begin with a choice-of-law analysis. *See, e.g.*, *Lewis v. Bayer AG*, 70 Pa. D. & C. 4th 52, 76-77 (C.P. Phila. 2004) (explaining that, pursuant to choice-of-law rules, nationwide class certification for a UTPCPL claim was inappropriate, since the states in which each individual resided possessed an overriding interest in protecting their own citizens). Appellant notes, however, that use of choice-of-law rules is unnecessary where, as here, the parties have already stipulated which law is to apply via a contractual choice-of-law provision.

Guardian's argument largely aligns with the district court's reasoning, namely, that the UTPCPL only applies to non-residents when there exists a sufficient nexus between the transaction or injury and the forum state, such that the improper conduct

---

[6] Appellant also repeats his contention that, since the drafting and review of the Agreement occurred at Guardian's headquarters in Pennsylvania, the transaction may be viewed as occurring within the Commonwealth. *See* Brief for Appellant at 30. However, the first issue is specifically limited to the UTPCPL's applicability with respect to "transactions which occurred outside of Pennsylvania." *Danganan*, 170 A.3d at 981 (order granting review).

[7] "Choice-of-law rules" refers to the precepts used to select which jurisdiction's laws to apply in a lawsuit, with the controversy often arising in federal diversity suits. *See, e.g.*, Gregory E Smith, *Choice of Law in the United States*, 38 HASTINGS L.J. 1041, 1041 n.1 (1987). In contrast, a choice-of-law provision, as in the Agreement here, pertains to a contractual agreement between the parties as to which jurisdiction's laws will govern the parties' relationship. *See, e.g.*, John F. Coyle, *The Canons of Construction for Choice-of-Law Clauses*, 92 WASH. L. REV. 631, 633 & n.6 (2017).

primarily and substantially occurred in Pennsylvania. Guardian contends that this test strikes an appropriate balance between each state's right to apply its own consumer protection statutes to its own citizens and Pennsylvania's right to govern conduct that occurs within its borders. In this respect, Guardian observes that "[s]tate consumer protection acts are designed to protect the residents of the states in which a deceptive act occurs or the individual resides and therefore the state where the individual resides has an overriding interest in applying the law of that state." Brief for Guardian at 9 (quoting *Lewis*, 70 Pa. D. & C. 4th at 76). Further, Guardian posits that the sufficient nexus test protects non-residents when the transaction or injury occurs in-state, citing a number of cases demonstrating application of this principle. *See* Brief for Guardian at 10-11 (citing, *inter alia*, *Wolfe*, 773 F. Supp. 2d at 574-75; *Mikola*, No. 4:CV-07-0612, 2008 U.S.Dist. LEXIS 44201, at *9-10); *see also A.H. Jr. v. Janssen Pharms., Inc.*, 2015 WL 6442359, at *8-9 (C.P. Phila. Oct. 1, 2015). Guardian proffers that the courts have uniformly agreed that UTPCPL claims cannot be pursued by non-residents for an injury that occurred extraterritorially. As for those victims who may remain unprotected under this formulation, Guardian contends that the forum states' consumer protection laws will cover any potential gaps left by the UTPCPL's limited reach.

Guardian also disputes Appellant's textual interpretation of "person," opining that many of the statutory construction factors outlined in *Meyer* favor a sufficient nexus test, ensuring that the focus of the claim remains where the allegedly deceptive act occurs. Guardian particularly emphasizes that, as a consequence of Appellant's interpretation, anyone from anywhere in the world could assert a claim under the UTPCPL. *See also Lewis*, 70 Pa. D. & C. 4th at 78 ("To hold that Pennsylvania law applies to [an extraterritorial] transaction affords Pennsylvania law [a] scope [not] contemplated by the Pennsylvania Legislature in enacting our choice of law rules [and would] require

manufacturers to adhere to the most restrictive standards imposed by any state[, effectively granting] . . . national jurisdiction to every state legislature." (alterations added)).

Guardian further advances that "person" must be read in context, highlighting the reference to "trade" and "commerce" and, in turn, those terms' definition that cabins the Law's application to activities "directly or indirectly affecting the people of this Commonwealth." 73 P.S. §201-2(3). Guardian proffers that this view comports with the notion that the UTPCPL is designed to address conduct that impacts Pennsylvania. As for the "wherever situate" language in the definition of trade and commerce, *id.*, Guardian explains that it modifies the property or services that underlie the purportedly improper practices, but does not broaden the Law's applicability. All of this, Guardian develops, dovetails with the UTPCPL's purpose of protecting Pennsylvanians, while respecting each state's interest in enforcing its own consumer protection law. Guardian contends that employment of the sufficient nexus test, in this regard, ensures these goals.

Guardian additionally contests the import of *Thornell*, distinguishing that case insofar as it relied on an express legislative purpose section providing an intent to "foster 'fair and honest competition,'" which the UTPCPL does not have. *Thornell*, 363 P.3d at 591 (quoting WASH. REV. CODE §19.86.920). Guardian observes other statutory differences, including that the Washington consumer protection statute does not require reliance as an element of a plaintiff's claim, whereas the UTPCPL does. *Compare id.* at 592, *with Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1289-90 (Pa. Super. 2015). Guardian concludes that the animating purpose and governing standards differ between the laws such that *Thornell* does not support Appellant's position.

Moreover, Guardian notes that, on remand, the trial court in *Thornell* ultimately engaged in a choice-of-law analysis and concluded that a different jurisdiction had the most significant relationship to the cause of action, employing reasoning that substantively aligns with the sufficient nexus test. Guardian opines that the "rule advanced by the Washington Supreme Court in *Thornell* proved to be an unworkable standard *in that very case*." Brief for Guardian at 22 (emphasis in original). Additionally, Guardian contends that a choice-of-law analysis in this matter would reveal that the UTPCPL only applies to non-residents when the allegedly wrongful conduct occurred in Pennsylvania. *See In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011) (holding that, where the only contact to Pennsylvania is the fact of the location of the defendant's principal place of business, the UTPCPL will not apply).

The question of whether the UTPCPL permits a non-Pennsylvania resident to maintain a cause of action against a Commonwealth-headquartered business, based on out-of-state transactions, presents a matter of statutory interpretation, for which our review is *de novo* and plenary. *See Commonwealth v. Cullen-Doyle*, __ Pa. __, __, 164 A.3d 1239, 1241 (2017) (citation omitted). Our objective is to ascertain and effectuate the Legislature's intent. *See* 1 Pa.C.S. §1921(a); *Commonwealth v. Griffith*, 613 Pa. 171, 177, 32 A.3d 1231, 1235 (2011). Words that are clear and free from all ambiguity are presumed to be the best indicator of legislative intent. *See Commonwealth v. Fields*, 630 Pa. 625, 633, 107 A.3d 738, 743 (2014) (citing 1 Pa.C.S. §1921(b)).

Respecting the specific terms employed by the UTPCPL, we agree with Appellant's observation that the plain language definitions of "person" and "trade" and "commerce" evidence no geographic limitation or residency requirement relative to the Law's application. Although the trade and commerce definition includes a clause

relating to conduct that "directly or indirectly affect[s] the people of this Commonwealth," that phrase does not modify or qualify the preceding terms.  73 P.S. §201-2(3).  Instead, it is appended to the end of the definition and prefaced by "and includes," thus indicating an inclusive and broader view of trade and commerce than expressed by the antecedent language.  *See id.* (defining those terms as "the advertising, offering for sale, sale or distribution of any services and any property, . . . and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth").

Additionally, the notion of the UTPCPL as remedial legislation -- as well as its corollary liberal interpretation, so as to "effect its object of preventing unfair or deceptive practices" -- lends additional support to an understanding of the Law as protective of non-residents in the absence of contrary statutory language.  *Monumental Props., Inc.*, 459 Pa. at 460, 329 A.2d at 817.  In this respect, we recognize, as we previously have, the wide range of conduct the Law was designed to address, including equalizing the bargaining power of the seller and consumer, ensuring the fairness of market transactions, and preventing deception and exploitation, all of which harmonize with the statute's broad underlying foundation of fraud prevention.  *See id.* at 458-59, 329 A.2d at 815-16.

The *Thornell* court's reasoning offers further persuasive support for this view. Although Guardian accurately notes that the Washington Supreme Court relied, in part, on the express legislative purpose provision of that state's consumer protection law, which the UTPCPL lacks, the two acts, which are analogous with respect to their pertinent terms, reflect similarly broad goals predicated on preventing consumer fraud and ensuring competitive fairness.  *Compare* WASH. REV. CODE §19.86.920 (providing that the act is intended to foster "fair and honest competition"), *with* 73 P.S. §201-3

("Unfair methods of competition and unfair or deceptive acts or practice . . . are hereby declared unlawful."). Additionally, as the *Thornell* opinion suggests, the alleged misconduct of one Pennsylvania business may affect, in both direct and indirect ways, the people of the Commonwealth, even if the subject transactions are aimed at non-residents and occur wholly outside the state's borders. *See Thornell*, 363 P.3d at 591 ("The commerce and trade that the abusive company brings into Washington, and the alleged unfair and dishonest method by which it does so, affects the state economy and thus affects the Washington public at large." (alterations, quotation marks, and citation omitted)). Accordingly, we find that the Law's prescription against deceptive practices employed by Pennsylvania-based businesses may encompass misconduct that has occurred in other jurisdictions.

By viewing the UTPCPL in this manner, we necessarily reject the sufficient nexus test as employed by the trial court and advanced by Guardian. Although the limitations dictated by that test may have merit in terms of a policy approach, there is no textual basis in the UTPCPL for its imposition, and the Court may not supply additional terms to, or alter, the language that the Legislature has chosen. *See Commonwealth v. Tarbert*, 517 Pa. 277, 295, 535 A.2d 1035, 1044 (1987). Moreover, the sufficient nexus test, at least as it is described by Guardian, seems to be grounded in the notion that the injury or transaction at issue must occur within the state, a concept that appears to restate the now-rejected *lex loci delecti* rule. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (Pa. 1964).

Regarding Guardian's concern that any person around the globe may file a cause of action pursuant to the UTPCPL without any connection to the Commonwealth, Appellant accurately observes that other legal precepts may offer limitations, such as jurisdictional principles and choice-of-law rules. To the degree that disputes pertaining

to these matters may remain in this case, they are for the district court to resolve. *See, e.g.*, SUMMARY OF PA. JURISPRUDENCE 2d §1:10 (explaining that a choice-of-law analysis must be made "within the context of [the] specific litigation" (citing *McSwain v. McSwain*, 420 Pa. 86, 96-97, 215 A.2d 677, 683 (1966))).

## III. Contractual Choice-of-Law Provision

The second issue certified for review, pertaining to the contractual expansion of the UTPCPL's purported limited reach, is dependent on a finding that "the UTPCPL does not allow a non-Pennsylvania resident to invoke its protections." *Danganan*, __ Pa. __, 170 A.3d 981 (order certifying questions of state law). Thus, in light of our conclusion, pursuant to the first issue, that the text of the UTPCPL does not preclude its application to non-residents, the second issue is now moot.[8] *See, e.g.*, *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W. Va. 2016) ("We decline to answer the second and third certified questions, because they are mooted by our answer to the first certified question."); *see also In re Gross*, 476 Pa. 203, 209, 382 A.2d 116, 119 (1978) ("It is well established in this jurisdiction that this Court will not decide moot questions." (citing *Wortex Mills v. Textile Workers Union*, 369 Pa. 359, 370, 85 A.2d 851, 857 (1952))).

## IV. Conclusion

---

[8] The parties also develop positions pertaining to whether the particular language of the Agreement's choice-of-law provision was intended by them to be limited to contract causes of actions, rather than all claims arising from their contractual relationship, including those pursuant to the UTPCPL. This advocacy concerns matters of contractual interpretation, which are not presently suggested or subsumed by the second issue under review. *See Danganan*, __ Pa. __, 170 A.3d 981 (order certifying questions of state law). To the degree that the above contention remains at issue in this case, it is for the district court to resolve in the first instance.

Accordingly, in response to the first certified question, we hold that a non-Pennsylvania resident may bring suit under the UTPCPL against a Commonwealth-headquartered business based on transactions that occurred out-of-state. We further conclude that our answer to the first issue eliminates the predicate to the second question certified for review. The matter is returned to the Third Circuit Court of Appeals.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.