NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2545

_____

JOBE DANGANAN, ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED,
                                                                Appellant

v.

GUARDIAN PROTECTION SERVICES


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-15-cv-01495)
District Judge: Honorable Cynthia R. Eddy

_____

Argued: February 3, 2020

Before: SHWARTZ, SCIRICA, and RENDELL, *Circuit Judges*

(Opinion Filed:  May 21, 2020)

Michael D. Donovan [ARGUED]
Donovan Litigation Group
1855 Swedesford Road
Malvern, PA  19355

James M. Pietz
Suite 1616
429 Forbes Avenue
Pittsburgh, PA  15219
        *Counsel for Appellant*

Michael A. Iannucci
Laura E. Vendzules [ARGUED]
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA  19103
        *Counsel for Appellee*

_____

OPINION*

_____


SCIRICA, *Circuit Judge*

Plaintiff Jobe Danganan signed up for home-security services with Defendant Guardian Protection Services—locking himself into a three-year commitment based on the terms of the agreement. When he moved and sold his house, Guardian continued to bill him. Danganan paid for four months of service after his move and then filed consumer protection claims against Guardian, alleging fraudulent and deceptive trade practices. The trial court dismissed for failure to state a claim. Because the clear terms of the agreement authorized Guardian to continue to seek payment after Danganan moved and did not constitute deceptive conduct on which Danganan could justifiably rely, we will affirm.

**I.**

On April 23, 2013, Danganan and Guardian entered into an Authorized Dealer

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Sales and Monitoring Agreement that would provide Danganan home security services in his Washington, D.C. home. In the Agreement, Danganan agreed to pay a "Monthly Services Fee" of $44.95. Supp. App. 195. The Monthly Services Fee would be recurring every month throughout the three-year initial term of the Agreement.[1]

The Agreement states that Danganan's "obligations . . . continue even if [he] *sell[s] or leave[s]* the Premises." Supp. App. 198. (emphasis added). It only allows Danganan to terminate the Agreement within three days of execution. Danganan was, however, permitted to transfer the Agreement to "someone who purchases or rents [his] Premises" if Guardian "approve[s] the transfer in writing." *Id*.

In September 2014, Danganan moved from Washington, D.C. to San Francisco. In November 2014, he sold his Washington, D.C. home. He then provided Guardian with written and verbal notice of his desire to cancel his service. On November 17, 2014, Guardian wrote a letter "confirm[ing] [Danganan's] request that the 24-hour monitoring of [his] security system be discontinued" and stating Guardian would "no longer respond to any signals received from [Danganan's] alarm system effective 11/18/14." Supp. App.

---

[1] The three-year term was typed into the Agreement as a "Special Condition[]" and was separately initialed by both parties. Supp. App. 195. Though a preprinted section of the Agreement stated that the initial term was five years, the "Special Condition[]" of three years is controlling because it was added to the form contract, thereby representing the parties' true intent. *See Flatley by Flatley v. Penman*, 632 A.2d 1342, 1345 (Pa. Super. Ct. 1993) ("When a contract contains either hand or typewritten terms which are in conflict with the preprinted terms, the preprinted terms must always yield to the other terms because the hand or typewritten term presumably evinces the deliberate expression of the parties' true intent."). Regardless, as Danganan's counsel admitted during oral argument, whether the term is interpreted as three years or five years does not meaningfully affect the analysis of Danganan's claims.

47. The letter also stated—in bold—that "[t]his document serves only to provide information regarding service provided and does not alter any of the terms or conditions of the existing monitoring agreement in any way." *Id*.

Guardian continued to bill Danganan after service had been discontinued, and Danganan complained. On January 21, 2015, Guardian sent another letter "confirm[ing] [Danganan's] request that the 24-hour monitoring of [his] security system be discontinued" and stating that Guardian would be stopping service. Supp. App. 51. In bold, the letter informed Danganan that Guardian was "not intend[ing] to terminate [the] existing agreement" and that "all terms and conditions, *including [Danganan's] financial obligation under [the] monitoring agreement*, continue to be in full force and effect." *Id*. (emphasis added). After service was discontinued, Danganan paid four months' worth of fees, until Guardian stopped billing.

On June 9, 2015, Danganan filed a class action complaint against Guardian in the Philadelphia Court of Common Pleas. He brought claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1–201-9.2, and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq*. Guardian removed the action to federal court in the Eastern District of Pennsylvania, and the case was transferred to the Western District of Pennsylvania.

On June 13, 2019, the trial court granted a motion to dismiss, finding that Danganan failed to allege that he justifiably relied on Guardian's alleged deceptive

conduct and that Guardian's alleged conduct caused a loss.[2] Danganan now appeals.

## II.[3]

Danganan raises two counts: one under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and one under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"). He contends Guardian violated the UTPCPL by engaging in fraudulent or deceptive conduct by requiring him to continue to pay for services after he moved from, and sold, his home—and that such payment amounted to an unlawful contractual penalty. He also contends Guardian violated the FCEUA by attempting to collect money not owed under the Agreement because Guardian had cancelled service. Both of Danganan's claims ultimately fail because the Agreement clearly states that Danganan's financial obligations would continue after he moved or sold his home, and therefore, Guardian did not act fraudulently or deceptively by continuing to bill Danganan for payments he owed under the Agreement. Consequently, Danganan did not justifiably rely on any deceptive conduct.[4]

---

[2] Previously, on July 26, 2016, the trial court had dismissed the claims because it determined that Danganan could not bring Pennsylvania consumer protection claims as a non-resident. On appeal, we certified the question to the Pennsylvania Supreme Court, which determined that Danganan could bring both claims as a non-resident—leading to a reversal of the trial court. *See Danganan v. Guardian Prot. Servs.*, 742 F. App'x 634, 637 (3d Cir. 2018); *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 17 (Pa. 2018).

[3] The trial court had jurisdiction under 28 U.S.C. § 1332(d)(2). We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] The trial court dismissed all claims on a 12(b)(6) motion to dismiss. Our review is plenary. *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 230 (3d Cir. 2011). In reviewing whether Danganan stated a viable claim, we must accept as true all plausible facts alleged in his complaint and draw all reasonable inferences in his

**A.**

Danganan's claim under the UTPCPL fails because he does not allege he justifiably relied on deceptive or fraudulent conduct by Guardian. The UTPCPL prohibits unfair or deceptive trade practices and lists specific types of conduct that are inherently deceptive. 73 P.S. § 201-3. Danganan, however, brings his UTPCPL claim under the "catch-all" provision that generally prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id*. § 201-2(4)(xxi). To state a claim under the "catch-all" provision, a private plaintiff must plead justifiable reliance on the alleged deceptive conduct. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 201–02 (Pa. 2007); *see Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008). Justifiable reliance requires a plaintiff to "show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [fraudulent or deceptive conduct]." *Hunt*, 538 F.3d at 222 n.4 (citing *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001)).

Danganan does not allege justifiable reliance on deceptive conduct because the Agreement's terms are clear. He does not allege he relied on any statement by Guardian that he could move and sell his home and not continue to pay. There is no "presumption of reliance," *see Hunt*, 538 F.3d at 227, and Danganan has not pleaded that he relied on any conduct by Guardian other than the terms of the Agreement itself, which stated that

---

favor. *See, e.g.*, *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016). We may rely on "exhibits attached to the complaint and matters of public record." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (citation omitted).

"[Danganan's] obligations . . . continue even if [Danganan] sell[s] or leave[s] the Premises." Supp. App. 198.

The clear terms are controlling. *See Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468–69 (Pa. 2006) ("When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."). Danganan moved from his home in September 2014 and sold his home in November 2014. He then tried to cancel the Agreement and stop his obligations—an action prohibited by the clear terms. Danganan has not alleged reliance on any "fraudulent or deceptive conduct." *See* 73 P.S. § 201-2(4)(xxi). He has only alleged that Guardian enforced the Agreement as written.

Danganan also argues that the post-contractual conduct by Guardian rises to a UTPCPL violation because Guardian misrepresented the amount owed. But, when Danganan attempted to cancel the Agreement, Guardian wrote back agreeing to "discontinue[]" service and writing—in bold—that its response "does not alter any of the terms or conditions of the existing monitoring agreement in any way." Supp. App. 47. In response to another attempt to cancel service by Danganan, Guardian wrote back that service would be "discontinued" and—again, in bold—that the document was "not intended to terminate [the] existing agreement, all terms and conditions, *including [Danganan's] financial obligation under [the] monitoring agreement*, continue to be in full force and effect." Supp. App. 51 (emphasis added). With each communication, Guardian made clear that the terms of the Agreement continued to apply, which meant that Danganan's obligations continued after he moved and sold his home. Therefore,

Danganan cannot claim that he justifiably relied on any deceptive or fraudulent conduct by Guardian that indicated he was absolved from making payments.[5]

Danganan further contends that an unlawful contractual penalty—even if based on clear contractual terms—is itself a violation of the UTPCPL. Danganan only cites one case for this proposition, *Benson v. Budget Rent A Car Sys. Inc.*, No. 08-CV-4512, 2011 WL 4528334 (E.D. Pa. Sept. 29, 2011), which did not involve UTPCPL claims. In *Benson*, the district court allowed a FCEUA claim to go forward based on a liquidated damages clause, in part, because the formula was not stated in the contract—i.e. was not a clear term. *See* 2011 WL 4528334, at \*6. Here, the amount Danganan was required to pay was spelled out as a clear term, making *Benson* inapposite.[6]

---

[5] Danganan requests that we certify a question to the Pennsylvania Supreme Court, arguing that Pennsylvania courts have not "set[] forth the justifiable reliance standard in the context of post-contract performance." Appellant's Br. 49–50. Danganan is attempting to create an exception to the justifiable reliance requirement under the UTPCPL. The Pennsylvania Supreme Court, however, has "not recognized any exceptions" to the justifiable reliance requirement and "has applied [the requirement] in a variety of situations." *Hunt*, 538 F.3d at 221. There is no legally significant difference between pre- and post-contractual conduct related to the justifiable reliance requirement. We decline to grant Danganan's motion to certify his question.

[6] Even if Danganan had pleaded justifiable reliance, he has not pleaded that a reliance on Guardian's alleged "fraudulent or deceptive conduct" caused an "ascertainable loss." *See* 73 P.S. § 201-2(4)(xxi); *id*. § 201-9.2(a). Danganan claims that charging the *full* amounts of the remaining Agreement after service has been discontinued operates as an unlawful penalty. Assuming a claim for paying an unlawful contract penalty of the full contract price could amount to a UTPCPL violation, Danganan's claim here fails because he does not allege that he actually paid that penalty. After Guardian discontinued service, Danganan had at least 17 months remaining in the Agreement, but he only paid for four months' worth of service until Guardian stopped billing. The amount that he allegedly lost due to deceptive conduct is a fraction of the amount he contends constitutes an unlawful penalty. Thus, he failed to plead ascertainable loss based on an unlawful penalty.

**B.**

Danganan's FCEUA claim is based on the same arguments as his UTPCPL claim and also fails due to the terms of the Agreement. The FCEUA prohibits creditors from "us[ing] any false, deceptive or misleading representation or means" to collect any debt. 73 P.S. § 2270.4(b)(5). Danganan acknowledges that his claim under the FCEUA is "derivative" of his UTPCPL claim. *See* Appellant Br. 5. In his FCEUA claim, he alleges that Guardian has (1) "misrepresent[ed]" what Danganan owes; (2) "represented" that the Agreement could not be terminated by the consumer after the first three business days; (3) "represented" that Danganan was required to make payments after services had been cancelled; and (4) continued to bill for services no longer provided. Supp. App. 26 ¶¶ 43–45.

Danganan's contentions all fail based on the terms of the Agreement. The only representations Guardian has made are those that are in accord with the unambiguous terms of the Agreement. Under the Agreement, Danganan continued to owe payment after he moved. Therefore, Danganan has not alleged any "false, deceptive, or misleading representations or means" that Guardian used to collect a debt.

Danganan contends that the FCEUA includes violations of the federal Fair Debt Collection Practices Act ("FDCPA"), and that Guardian has violated the FCEUA by violating the FDCPA. The FCEUA encompasses violations of the FDCPA. *See* 73 P.S. § 2270.4(a) ("It shall constitute an unfair or deceptive debt collection act or practice under [the FCEUA] if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act."). Under the FDCPA, any debt collected must be "expressly authorized by

9

the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).[7] Danganan argues that Guardian is seeking to collect a payment that is not permitted by Pennsylvania law. The FDCPA, however, states that a payment may be *either* expressly authorized by an agreement or permitted by law. Here, the amount owed by Danganan was expressly authorized by the Agreement—the monthly amount was explicit, and the requirement that Danganan keep paying after he moved and sold his home was clear. Therefore, whether or not Pennsylvania law permitted the payment is irrelevant. Neither the Agreement nor Guardian's subsequent actions to collect the amount owed violate the FCEUA.[8]

## III.

For the foregoing reasons, we will affirm the trial court's grant of the motion to dismiss.

---

[7] This is also a requirement under the FCEUA itself; using the same language as the FDCPA. *See* 73 P.S. § 2270.4(b)(6)(i) (including as a violation the "collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

[8] Danganan's argument relating to the FDCPA fails for two additional reasons. First, Danganan raised this argument for the first time in his reply brief, making the argument waived. *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204 n.29 (3d Cir. 1990). Second, a FDCPA violation is actionable under the FCEUA only when it is committed by a "debt collector." 73 P.S. § 2270.4(a). Guardian, however, was a "creditor" under the FCEUA, not a debt collector. *See id.* § 2270.3 (defining a "creditor" as a person "to whom a debt is owed or alleged to be owed"); *id.* (defining a "debt collector," in relevant part, as a person, other than a creditor, "acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed"); *Glover v. F.D.I.C.*, 698 F.3d 139, 152 (3d Cir. 2012) (interpreting these provisions); Supp. App. 25 ¶ 36 (Danganan's complaint, alleging that Guardian is a "creditor" under the FCEUA).