**[J-68-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| CARL SADLER | : No. 6 EAP 2020 |
| | : |
| | : Appeal from the Order of |
| v. | : Commonwealth Court entered on |
| | : 05/22/2019 at No. 328 CD 2018 |
| | : (reargument denied 07/18/2019) |
| WORKERS' COMPENSATION APPEAL | : vacating, remanding, reversing and |
| BOARD | : granting in part the order entered on |
| | : 02/16/2018 by the Workers' |
| | : Compensation Appeal Board at No. |
| APPEAL OF: PHILADELPHIA COCA- | : A16-0936 |
| COLA COMPANY | : |
| | : ARGUED: September 15, 2020 |


**OPINION**


**JUSTICE DONOHUE**                    **DECIDED: January 27, 2021**

Appellant, Philadelphia Coca-Cola Company ("PCCC"), asks this Court to

determine whether the Commonwealth Court erred in concluding that it was not entitled,

pursuant to Section 306(a.1) of the Workers' Compensation Act,[1] to a reimbursement of

---

[1] 77 P.S. § 511.1, Act of June 2, 1915, P.L. 736, as amended.

Section 306(a.1) provides as follows:

Nothing in this act shall require payment of compensation under clause (a)
or (b) for any period during which the employe is incarcerated **after a
conviction** or during which the employe is employed and receiving wages
equal to or greater than the employe's prior earnings.

77 P.S. § 511.1 (emphasis added).

benefits paid to Appellee Carl Sadler ("Sadler") during his pre-conviction incarceration while awaiting trial. Alternatively, PCCC contends that Commonwealth Court's interpretation of Section 306(a.1) violates equal protection guarantees under the federal and state constitutions. Finding no merit in PCCC's arguments, we affirm the order of the Commonwealth Court.

On July 2, 2012, Sadler was injured while working as a production manager for PCCC. PCCC issued a notice of compensation payable, acknowledging Sadler's injuries as a right pinky finger amputation and a low back sprain and providing that Sadler was entitled to a weekly disability rate of $652 based upon an average weekly wage of $978. On August 13, 2013, Sadler was charged with a crime in New Jersey. Because he could not post bail, Sadler remained incarcerated for 525 days, until January 22, 2015, when he pled guilty. At sentencing, immediately after accepting Sadler's plea, the trial court sentenced him to 525 days of incarceration, gave him credit for time served, and immediately released him from custody.

Months later, Sadler filed a petition seeking review of his average weekly wage. PCCC responded with a suspension petition, contending that Sadler was not entitled to retain the benefits he received while incarcerated and asking that his benefits be adjusted to prevent him from being unjustly enriched for the amounts received during that time. The petitions were heard by a workers' compensation judge, who concluded that PCCC was entitled to reimbursement for benefits paid to Sadler during his pre-conviction incarceration. The judge did not provide for a future credit against benefits to be paid to Sadler, but rather ordered that PCCC should petition the Supersedeas Fund for reimbursement. PCCC appealed to the Workers' Compensation Appeals Board

("Board"), and Sadler cross-appealed. The Board modified the workers' compensation judge's decision by allowing PCCC to seek a credit against Sadler's future payments, but affirmed in all other respects.

Sadler appealed to the Commonwealth Court. He maintained that his workers' compensation benefits had been improperly suspended because he spent no time in incarceration **after** his conviction, as is required pursuant to the clear language of Section 306(a.1). The Commonwealth Court agreed. *Sadler v. WCAB (Philadelphia Coca-Cola)*, 210 A.3d 372 (Pa. Commw. 2019). The Commonwealth Court stressed that Sadler's pre-conviction incarceration was due to his inability to post bail and that consistent with Section 306(a.1)'s plain language, his benefits could not be suspended during that time. *Id.* at 381. The Commonwealth Court also reasoned that the General Assembly, in enacting Section 306(a.1), was aware that pursuant to Section 9760(1) of the Sentencing Code,[2] an individual who is incarcerated prior to being convicted is entitled to receive post-conviction credit for time served. *Id.* at 382. Thus, the court reasoned, the General Assembly could have included a provision in Section 306(a.1) that would "allow for time spent incarcerated **before** a conviction to be deemed as occurring after a conviction[.]" *Id.* (emphasis in original).

The Commonwealth Court based its decision in substantial part on its prior decision in *Rogele, Inc. v. WCAB (Mattson)*, 969 A.2d 634 (Pa. Commw. 2009), a factually similar case also involving the payment of workers' compensation benefits during a period of pre-incarceration. In discussing Section 306(a.1), the court recognized that "this section makes no reference to a termination of benefits during periods of incarceration

---

[2] 42 Pa.C.S. § 9760(1).

prior to conviction" and recognized that it was powerless to "engraft language onto a statute" or "impute an intent where the statutory language is unambiguous." *Id.at* 637-38. The Commonwealth Court continued, explaining that "[a]bsent explicit statutory provision, [it] is not free to reduce statutorily-created benefits. If the legislature had intended that benefits be discontinued for an incarcerated recipient **prior** to conviction, it would have written the statute to achieve that result." *Id.*

In dissent, the Honorable Anne Covey found that the lower tribunals correctly granted PCCC's petition due to Sadler's incarceration. In her view, the majority's "narrow reading" of Section 306(a.1) failed "to give effect to all of the words in that provision." *Sadler*, 210 A.3d at 388 (Covey, J., dissenting). Judge Covey emphasized the portion of the statute providing that "nothing in the Act shall require the payment of [benefits] for '**any period during which** the employe is incarcerated after a conviction[.]'" *Id.* (emphasis in original). The dissent concluded that the majority ignored the emphasized portion of this provision by focusing on the single term "after," thus distorting the language of the statute. *Id.*

This Court subsequently granted PCCC's petition for allowance of appeal to consider the following issues:

1. Whether the Commonwealth Court erred in reversing … [the Board's] affirmance of the [workers' compensation judge's] grant of [PCCC's] suspension petition for a [seventy-five] week period which allowed [PCCC] to assert a credit against [Sadler's] future compensation for money paid to [Sadler] during his incarceration as the grant of a suspension was consistent with the Act and the applicable case law?

2. Whether the Commonwealth Court's interpretation that [PCCC] is precluded from suspending benefits under the circumstances of this case[] creates an unequal application of the law for similarly situated claimants, and similarly-situated employers, in violation of the Equal Protection guarantees of the Constitutions of the Commonwealth of Pennsylvania and the United States of America?

*Sadler v. WCAB ((Philadelphia Coca-Cola Co.)*, 223 A.3d 674 (Pa. 2020) (per curiam).[3]

PCCC's first claim presents a straightforward issue of statutory interpretation. Issues of statutory interpretation present questions of law, and as such our standard of review is de novo and the scope of review is plenary. *See, e.g.*, *Cash Am. Net of Nevada, LLC v. Com., Dep't of Banking*, 8 A.3d 282, 289 (Pa. 2010). As with all matters of statutory construction, the plain language of the law must govern. *Commonwealth v. Small*, 238 A.3d 1267, 1284 (Pa. 2020) (citing 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")). Our objective when interpreting a statute is to ascertain the intent of the General Assembly. 1 Pa.C.S. § 1921(a). Statutory language that is clear and free from all ambiguity is presumed to be the best indicator of legislative intent. *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 16 (Pa. 2018).

PCCC argues that the Commonwealth Court erred in its interpretation of Section 306(a.1). The language therein, PCCC argues, is unambiguous in its prohibition of benefits during a period of incarceration served for a conviction. PCCC's Brief at 15-16. Thus, once Sadler was convicted, the time he served in pre-trial detention converted to a period of incarceration served for his crime. PCCC's Brief at 16, 34. A contrary reading, PCCC insists, contradicts the General Assembly's intent and conflicts with its purpose. *Id.* at 17-18. Echoing Judge Covey's dissent, PCCC maintains that "by focusing on the word 'after', the [m]ajority distorts the meaning of the statute." *Id.* at 19. PCCC argues

---

[3] As a general matter, in workers' compensation appeals, this Court will affirm the adjudication below unless we find an error of law or violation of constitutional rights, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. *Kramer v. WCAB (Rite Aid Corp.)*, 883 A.2d 518, 523 (Pa. 2005)

that the purpose of Section 306(a.1) is to prohibit the receipt of benefits "for any period of time that an injured employee has been convicted and is incarcerated therefor," and that its preferred interpretation best effectuates the intent of the legislature. *Id.* at 20-23. To conclude otherwise, PCCC contends, would unjustly enrich a claimant (like Sadler) by conferring an unintended windfall. *Id.* at 17.

Sadler also characterizes the language of Section 306(a.1) as unambiguous and views it as a clear expression of the General Assembly's intent that employers are prohibited from suspending benefits during any pre-conviction period of incarceration. Sadler's Brief at 21-22. He maintains that courts may not alter the clear terms of a statute and contends that PCCC's preferred interpretation runs afoul of this principle by engrafting language onto Section 306(a.1) that would allow PCCC to receive credit for payments made during his pre-trial incarceration. *Id.* at 22. Sadler rejects PCCC's allegation of unjust enrichment because he was not incarcerated "even one day" after being convicted, and therefore was at all times entitled to the benefits he received during his period of pre-conviction incarceration. *Id.* at 21. Far from being unjustly enriched, he counters that PCCC would receive a windfall if it received credit for payments to which he was lawfully entitled by recasting the timeframe in which they were received. *Id.* at 25-26.[4]

We reiterate that Section 306(a.1) provides as follows:

> Nothing in this act shall require payment of compensation under clause (a) or (b) **f**or any period during which the employe is incarcerated **after a conviction** or during which

---

[4] In an amicus brief filed in support of Sadler, the Pennsylvania Association for Justice likewise takes the position that the language is unambiguous. It contends that PCCC's position (and Judge Covey's dissent) disregards the statute's plain language in favor of an interpretation based on policy considerations.

the employe is employed and receiving wages equal to or greater than the employe's prior earnings.

77 P.S. § 511.1 (emphasis added). We agree with Sadler and the Commonwealth Court that the above bolded language is clear and unambiguous. By its express terms, the statute authorizes the termination of benefit payments only during periods of incarceration served **after** conviction. Conversely, the provision makes no reference to the termination of benefit payments during periods of incarceration served **prior** to conviction. The phrase "after a conviction" is a temporal restriction on the period of incarceration during which a claimant is ineligible for benefits. Sadler was not incarcerated during any period of time after his conviction, and thus no basis exists under Section 306(a.1) for a termination of his benefits as a result of his incarceration.

PCCC proposes that we interpret Section 306(a.1) to mean that a claimant is barred from receiving benefits "for any period of time that [the claimant] has been convicted and is incarcerated **therefor**." PCCC's Brief at 20 (emphasis added). This interpretation would effectively eliminate the temporal restriction that the General Assembly included in the statute by capturing all periods of incarceration traceable to an eventual conviction. We may not accept this interpretation. In interpreting a statute, we may not add additional words to its language to alter an unambiguous legislative intent. *See, e.g., Commonwealth. v. Kingston*, 143 A.3d 917, 925 (Pa. 2016). Here the legislature did not include the word "therefor" in Section 306(a.1); instead, it included the words "after a conviction" to provide a clear temporal restriction. It could have drafted Section 306(a.1) without a temporal restriction, but it simply did not. 1 Pa.C.S. § 1921(a) (a statute's plain language generally provides the best indication of legislative intent). As a result, we must give effect to its explicit temporal restriction.

The General Assembly's inclusion of the temporal restriction is consistent with the requirement in our Sentencing Code that incarcerated defendants receive credit against a sentence for time spent in custody on the charge that gives rise to the sentence. *See* 42 Pa.C.S. § 9760(a). While there is no constitutional right to credit against a sentence for time served, this Court has held that the purpose of requiring credit for pre-conviction detention is based on the presumption of innocence that is fundamental to our criminal justice system. *Martin v. Pennsylvania Bd. of Prob. & Parole*, 840 A.2d 299, 304 (Pa. 2003). As this Court indicated in *Martin,* "[u]nderpinning credit statutes is the principle that an indigent offender, unable to furnish bail, should serve no more and no less time in confinement than an otherwise identically situated offender who succeeds in furnishing bail." *Id.* That Sadler's pre-conviction incarceration was ultimately counted as credit against his sentence imposed for his eventual conviction does not in any respect "convert" his pre-conviction incarceration into post-conviction incarceration.[5] Workers' compensation benefits may not be denied to someone who is presumed innocent and is incarcerated solely because he cannot post bail, while continuing to pay benefits to individuals who are able to do so. *Barron v. Ellis Hosp.*, 663 N.Y.S.2d 698, 699 (N.Y. App. Div. 1997).

---

[5] The dissenting judge in the Commonwealth Court argues that "after [Sadler's] conviction, those 525 days came squarely within the statutory language of '**any period during which** the employe is incarcerated after a conviction ...[,]' 77 P.S. § 511.1 (emphasis added), and therefore, in accordance with the General Assembly's intent that no WC payment is required to be made for any period of incarceration." *Sadler*, 210 A.3d at 388 (Covey, J., dissenting). We disagree. The phrase "credit for time served" indicates by its terms that incarceration **prior** to conviction is being credited. Such period of incarceration is not contemplated by the relevant statute.

In response to the Commonwealth Court's decision, PCCC also now challenges Section 306(a.1) under the Pennsylvania and federal constitutions, alleging that it results in an unequal application of the law. PCCC argues that the Commonwealth Court's interpretation, if correct, impermissibly creates two classes of claimants who have been convicted of crimes: those who continue to receive benefits and those who do not. PCCC's Brief at 43-44. PCCC contends that this division among convicted claimants is not rationally related to the cost-containment purpose of the Workers' Compensation Act. *Id.*

In contrast, Sadler sees the classifications as between claimants incarcerated prior to conviction and those incarcerated after conviction. Sadler's Brief at 32-33. Sadler emphasizes that Section 306(a.1) was enacted to prohibit the payment of benefits to claimants who, by virtue of a criminal conviction, removed themselves from the workforce and draws a distinction, explaining that while pre-trial incarceration is a symptom of indigency, post-conviction incarceration is the result of a criminal adjudication. *Id.* at 29-30. The circumstances of incarceration are sufficiently different, Sadler argues, that the classification is rationally related to the state's interest in not providing benefits to a claimant whose absence from the workforce is self-imposed. *Id.* at 32-33.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The right to equal protection guaranteed by Pennsylvania's Constitution is found in Article I, Section 1 thereof, which provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and

protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. The protections afforded under the federal charter and this Commonwealth's Constitution in this regard are coterminous. *See, e.g.*, *Kramer v. WCAB (Rite Aid Corp.)*, 883 A.2d 518, 532 (Pa. 2005).

The constitutional guarantee of equal protection requires that similarly situated parties receive similar treatment. *Lohr v. Saratoga Partners, L.P.,* 238 A.3d 1198, 1209–10 (Pa. 2020). This protection leaves room for legislative branches to draw classifications in certain instances, provided that the classifications are justified. *Id.* at 1210. Whether a classification is justified depends upon the type of classification, what the governmental interest is in creating the classification, and the relationship of that interest to the classification. *Id.* at 1117-18. The familiar three-tiered system provides that classifications involving fundamental rights and suspect classifications trigger strict scrutiny; important rights and sensitive classifications require intermediate scrutiny; and all other legislative classifications are subject to rational basis review. *Id.* at 1118. This Court previously determined that the Workers' Compensation Act confers a social welfare benefit on injured workers, and that "a statutory classification in the area of social welfare is consistent with equal protection if it meets the rational basis test." *Kramer,* 883 A.2d at 534 (citing *Richardson v. Belcher*, 404 U.S. 78. 80 (1971); *Dandridge v. Williams*, 397 U.S. 471, 487 (1970); *Ligonier Tavern, Inc. v. WCAB (Walker)*, 714 A.2d 1008, 1011 (Pa. 1998)).

Rational basis review involves a two-part analysis. First, we consider whether the statute at issue seeks to promote a legitimate state interest; if so, we must determine whether the classification created by the statute is reasonably related to achieving that

state interest. *Id.* Application of this standard does not require an express statement of purpose by the General Assembly concerning the statute at issue; courts may "hypothesize reasons why the legislature created the particular classification at issue and, if some legitimate reason exists, the provision cannot be struck down, even if its soundness or wisdom might be deemed questionable." *Id.*

Under this rubric, we do not hesitate to find that Section 306(a.1) does not violate equal protection guarantees. This Court has previously discerned that the purpose of Section 306(a.1) is to preclude payment of workers' compensation benefits to claimants who are removed from the workforce because of their own criminal conduct. *Henkels & McCoy, Inc. v. WCAB (Hendrie)*, 776 A.2d 951, 955 (Pa. 2001). Section 306(a.1)'s distinction between those incarcerated after a criminal conviction and those serving pre-conviction incarceration is reasonably related to achieving this state interest, as it denies benefits to those who have removed themselves from the workforce as a result of their criminal conduct, but permits a continuation of benefits to those who are presumed innocent and are incarcerated only because they cannot afford to make bail. In this regard, we agree with the Commonwealth Court that "[b]ecause an accused is presumed innocent until proven guilty, pretrial incarceration is entirely irrelevant to the issue of guilt," and thus pretrial incarceration is not equivalent to voluntarily removing oneself from the workforce. *Rogele, Inc.*, 969 A.2d at 638.

The order of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.